See also Art. 758, Vernon's Ann.C.C.P.; 31 Tex.Jur., 325, Sec. 119 and Thompson v. State, 57 Tex.Cr.R. 408, 123 S.W. 593.

It is the province of the attorneys to examine the witnesses. However, there may be occasions where it would be necessary for the judge to interfere. If so, such examination should be conducted with great caution.

The right of an accused to a free, fair and full presentation of his evidence in support of a motion for a new trial is a valuable one. It should not be unduly constrained or curtailed by any actions of the trial judge.

It appears that the procedure followed and the occurrences that took place during the hearing of the motion for a new

trial as shown above were reasonably calculated to constrain the witnesses and curtail their testimony which was prejudicial to the rights of the appellant.

The judgment is reversed and the cause remanded.

Opinion approved by the court.

**L. R. THOMPSON et al., Appellants,**

v.

**D. E. McAlister GRAHAM et vir, Appellees.**

No. 3405.

Court of Civil Appeals of Texas.

Eastland.

Oct. 24, 1958.

Rehearing Denied Nov. 21, 1958.

Dan Abbott, Abilene, for appellants.

Wagstaff, Harwell, Alvis & Pope, Abilene, Mays, Leonard & Moore, Sweetwater, Upton, Upton, Baker & Griffis, San Angelo, for appellees.

GRISSOM, Chief Justice.

On October 9, 1953, L. R. Thompson, an employee of Ace Drilling Company, was injured by the falling of a steel ladder which had been placed in position, but not bolted to the derrick floor, by employees of D. E. McAlister Graham. This is a recoupment suit by Thompson and the insurance carrier against the alleged negligent third party who caused Thompson's injury. Thompson alleged he suffered an almost complete paralysis of his body from the waist down. He was paid compensation by Employers Mutual Liability Insurance Company of Wisconsin, the insurance carrier for Ace Drilling Company. On January 18, 1957, Thompson sued D. E. McAlister Trucking Company, "a corporation", for damages alleged to have been caused by its negligence in failing to bolt the ladder to the derrick floor. Said defendant answered as a corporation. On January 28, 1958, Thompson filed a second supplemental petition wherein he alleged he had been informed by defendant that "at the time this cause of action arose on or about the 9th day of October, A.D., 1953, D. E. McAlister Trucking Company was not, in fact a corporation." He then sued D. E. McAlister Graham, a married woman, doing business as McAlister Trucking Company, and made her husband, Paul Graham, a defendant. On the same day an agreement was made for such substitution and other matters and filed in this case. Said agreement concluded as follows:

> "It is further stipulated and agreed that all depositions heretofore taken in this cause, all pleadings heretofore filed in this cause, and all orders of the court heretofore entered in this cause and all stipulations and agreements entered into in this cause by and between L. R. Thompson and D. E. McAlister Trucking Company, a corporation, shall be considered as having been refiled on behalf of and against the plaintiff, L. R. Thompson, and the defendants, D. E. McAlister Graham and her husband Paul Graham and shall be binding upon

the plaintiff, L. R. Thompson, and the defendants, D. E. McAlister Graham and Paul Graham at such time as said supplemental petition is filed and all parties shall have the use of all pleadings, orders and agreements heretofore signed, filed and entered by and between the plaintiff L. R. Thompson and the former defendant, D. E. McAlister Trucking Company, a corporation, as if each of such pleadings and agreements had been filed and all orders of the court had been entered contemporaneously with the filing of the supplemental petition substituting parties defendant."

Said stipulation was approved by an order of the court, the concluding paragraph of which is as follows:

"It is furthermore, ordered, adjudged and decreed, that all depositions, pleadings, stipulations, and agreements and orders of court entered into or filed before the substitution of said parties defendant, for D. E. McAlister Trucking Company, a corporation, are ordered refiled as of the time of the filing of said plaintiff's supplemental petition substituting parties, and all stipulations and agreements shall enure to the use of and shall be binding upon D .E. McAlister Graham and her husband Paul Graham as if it had been filed, entered into, or ordered contemporaneously with the filing of said supplemental petition naming D. E. McAlister Graham and her husband, Paul Graham, parties defendant in lieu of D. E. McAlister Trucking Company, a corporation."

Theretofore, on January 21, 1958, Thompson and McAlister Trucking Company had stipulated that the reasonable and necessary medical, hospital and pharmaceutical expenses incurred as the result of Thompson's injury amounted to $5,865 and that same "have been paid" by said insurance company. Said agreement then continued as follows:

"It is further agreed and stipulated that on October 23, 1953, The Employers Mutual Life Insurance Company of Wisconsin, the Workmen's Compensation carrier for Ace Drilling Company, the employer of the Plaintiff, L. R. Thompson, assumed the payment of Workmen's Compensation Insurance benefits to the Plaintiff L. R. Thompson and paid him a total of $9,527.75."

The agreement was filed in this case on January 22, 1958.

The case was set for trial on February 3, 1958. On that day Thompson tried to file his third supplemental petition in which he alleged said insurance carrier did not assume liability for payment to plaintiff of compensation for total and permanent disability until December, 1956, and "said lump sum payment, contemplating the balance due for total and permanent disability, was not paid to the Plaintiff herein until the 28th day of December, A.D., 1956."

The court refused to allow Thompson to file said petition because it was "in apparent conflict" with the stipulation of January 21st. It then sustained defendants' exceptions that its liability depended upon the terms of the contract between it and Ace Drilling Company and that the terms of said contract were not alleged and that plaintiff's cause of action was barred by the two years statute of limitations, Vernon's Ann.Civ.St. art. 5526. The court then dismissed the case. That order recites that said exceptions were presented and the court considered the pleadings and "stipulation on file" and sustained said exceptions.

"And it further appearing that the plaintiff declined to amend or further plead, other than by his third supplemental petition, which the Court has heretofore refused to allow to be filed, the cause is dismissed."

Thompson and the insurance carrier have appealed.

On February 3, 1958, said insurance carrier had filed a plea in intervention, alleging that it carried the workmen's compensation insurance and "was required to" and did pay compensation to Thompson for total and permanent disability amounting to $15,392.81. It prayed that it be paid said sum, plus attorney's fees, out of any money awarded Thompson.

Appellants contend, among other things, in effect, that the court erred in sustaining appellees' contention that limitation commenced running against plaintiffs' cause on October 23, 1953, and in holding that appellants' stipulation amounted to an admission of facts that show conclusively that limitation then started to run. Appellants say that said agreement merely meant that payments were then commenced and left the date payments were consummated and the amount to be paid uncertain; that the real meaning is that the insurer commenced payment on October 23, 1953, and eventually paid $9,527.75 and that, in fact, payment was consummated and limitation did not commence to run until December, 1956. In connection therewith appellants call attention to the fact that in February, 1957, the insurance carrier and Thompson entered into an agreement, to which appellees were not parties, that said insurer "on or about the 21st day of December, A. D., 1956, assumed full liability for payment to * * * Thompson for total and permanent * * * disability" which had been paid to Thompson as of January 1, 1957, and that said insurer was entitled to recover under their subrogation $15,392.81 from any amount recovered from the D. E. McAlister Trucking Company. Said stipulation was filed in this case on March 8, 1957. Appellants say that construing the stipulation between Thompson and appellees as a whole, it does not conclusively appear that it was agreed that the insurer assumed "liability" for payment of compensation for total and permanent disability on October 23, 1953, but that if such was the effect of that writing it was not the true intention, was a mistake, and, further, that its counsel was not authorized to make such an admission. Appellants say an effort was made to correct same and the court should have allowed the filing of Thompson's third supplemental petition; that appellees did not rely on said so-called admission as establishing a material fact because they knew from the agreement between Thompson and the insurer filed in this case in March, 1957, that compensation payments were not concluded until December, 1956, and, further, that the stipulation does not admit that "full payment" was made in October, 1953, and from the record it is evident payment was not made until December, 1956.

Setting aside a stipulation ordinarily is within the discretion of the trial court. Porter v. Holt, 73 Tex. 447, 11 S.W. 494; Hancock v. Winans, 20 Tex. 320; Pisano v. Texas & N. O. R. Co., Tex.Civ. App., 112 S.W.2d 316 (Writ Dis.). Stipulations may generally be received as judicial admissions in the absence of allegations and proof of fraud, mistake or lack of authority. City of Beaumont v. Stephenson, Tex.Civ. App., 107 S.W.2d 915 (Writ Dis.). But, upon proper allegation and proof, it may be established, or an issue of fact may be raised, as to authority, fraud or mistake, or an ambiguous stipulation may be explained. If the agreement is ambiguous, or there are allegations of fraud or mistake a litigant should ordinarily be permitted to present such proof, especially when his and another's cause would be otherwise barred.

Appellees say they have never contended that the stipulation means that $9,527.75 was paid in October, 1953, but that the insurance carrier then assumed "liability" for payment of compensation benefits "for total and permanent" disability. The stipulation does not say that "liability" was assumed for payment of compensation for "total and permanent" disability, nor does it fix Thompson's wage rate. Appellees admit that when there is a controversy as to the extent or duration of an injury limitation does not commence to run until final adjudication, but they say that, by way of illustration, in a death case limitation starts to run from

the first payment because the insurer either owes full death benefits or none, and that the same reasoning applies to this case, where a man has become practically paralyzed below the waist.

The stipulation that cause the dismissal of the case, towit, that in October, 1953, the insurer "assumed the payment of workmen's compensation insurance benefits to the plaintiff L. R. Thompson and paid him a total of $9,527.75," might be interpreted as an admission that the insurer paid Thompson $9,527.75 on October 23, 1953, fourteen days after Thompson was injured. But, appellees admit that the insurer did not then pay him said amount and that the insurer then only began payment of compensation and continued making payments until they paid him said amount, plus medical, hospital and drug expenses. Thompson alleged that in October, 1953, he was nineteen years old.

█ The authorities hold that such a cause of action accrues—and limitation starts to run against it—when compensation is paid or liability therefor is assumed by the insurer. Plaintiffs' petition did not show on its face that either had been done more than two years before Mrs. Graham and her husband were made defendants. Therefore, the exception that it was barred should not have been sustained and did not justify its dismissal. The other exceptions were also improperly sustained because Thompson, in reply thereto, had alleged in his first supplemental petition that if McAlister moved the rig under a contract with Ace that said contract required McAlister "to properly secure the steel stairs to the rig floor when they were erected by Defendant's employee," and that such failure constituted negligence and was a proximate cause of plaintiff's injury. If dismissal were proper, it was because the stipulation showed as a matter of law that the cause of action accrued more than two years before this suit was filed. Some authorities hold, in effect, that such a cause of action does not accrue until the amount paid or assumed is determined. In Texas Employers Ins.

Ass'n v. Texas & P. R. Co., Tex.Civ.App., 129 S.W.2d 746, 750 (D.J.C.), we said:

"The insurance carrier cannot maintain the action either for itself, or in its trust capacity for the employee or beneficiary, until the amount of its liability for workmen's compensation 'has been paid or assumed.' This is so because otherwise, there could be no apportionment of the cause of action or amount of recovery thereon as between the insurance carrier in its own right and that of the insured employee or beneficiary represented by it as trustee. In fact, the very existence of any cause of action in the injured employee, or his beneficiary, may, under easily conceivable circumstances, be wholly contingent upon the amount of compensation paid or assumed by the insurance carrier. Mitchell et ux. v. Dillingham, Tex.Civ.App., 22 S.W.2d 971. Take a situation, for instance, where the undisputed facts of the injury and damages showed an amount recoverable less than the compensation paid or assumed. In such cases, there never existed any cause of action against the third person in favor of the employee or beneficiary. Plainly, we think, limitation could not begin to run against either the insurance carrier on the one hand, or the employee or beneficiary on the other, until the fact of the amount of payment or assumption of the payment of compensation existed."

The first part of said quoted holding, down to the citation of Mitchell v. Dillingham, was quoted with approval in Brooks v. Lucky, Tex.Civ.App., 308 S.W.2d 273, 275 (RNRE). In Fidelity Union Casualty Co. v. Riley, Tex.Civ.App., 26 S.W.2d 682, 685, the court said:

"By the election thus made, the Casualty Company became subrogated, under the terms of the statute, to the rights of appellee against the Power & Light Company to the extent only of reimbursement for the sum 'paid or as-

sumed' as compensation to appellee under the provisions of the Workmen's Compensation Law. When can the Casualty Company assert such right? Manifestly, not until it has paid or assumed to pay the amount awarded to appellee in his claim against it. As long as it is contesting such claim and refusing to pay compensation for appellee's damages, it is not in a position to assert its right of subrogation, for such right has not matured."

In Fidelity Union Casualty Co. v. Texas Power & Light Co., Tex.Civ.App., 35 S.W.2d 782, 783 (Writ Ref.), the employee's claim for compensation was contested and the point decided was that a suit for recoupment is barred by limitation two years after rendition of final judgment awarding compensation, not two years after the injury. In so holding, however, the court said:

"This right of subrogation has existence only in the terms of this statute and it can be enforced only as therein directed. An analysis of this statute shows that the right of subrogation is not absolute, but is contingent upon the happening of the future event, that Riley prosecutes his claim against the casualty company to a successful conclusion. If he be defeated in this claim, then no cause of action against appellee is given to either Riley or the casualty company. It is clear that the contingent event, which will mature the cause of action on the right of subrogation, given in this statute, does not occur in a contested claim of an injured employee against a compensation carrier, until final judgment in favor of the injured employee is entered, for only then can the law declare that the compensation carrier has assumed to pay the claim of the injured employee.

"Previous to the entry of such judgment no enforceable cause of action existed in favor of the compensation carrier; for it could not be alleged in a petition in a suit to enforce such right

that appellee should be adjudged to pay the casualty company or Riley any sum by virtue of this right of subrogation, because such fact was in the process of judicial ascertainment. No cause of action, therefore, accrued on the respective claims herein asserted until the final judgment of this court, when the fact, necessary to give the casualty company and Riley an enforceable right, was given the judicial determination contemplated by said statute. As the statute of limitation did not begin to run until the subrogated cause of action for personal injuries accrued, this suit was instituted within the limitation period. Fidelity Union Casualty Company et al. v. Riley, supra; 37 C.J. 811, § 154 and authorities cited in note."

In Fort Worth Lloyds v. Haygood, 151 Tex. 149, 246 S.W.2d 865, 869, our Supreme Court said it had been held there is but one cause of action against the third party tortfeasor and that no cause of action exists in favor of an injured employee except as to the damages, if any, in excess of the amount of compensation collected by him. It held that an employee who has been paid compensation could not impair the insurance carrier's right to recoupment against the negligent third party by settling the case with the third party. In the course of the opinion it said:

"We believe the fundamental principle underlying the last three cases cited above is that where compensation has been paid to an injured employee, or his representatives, and they later file suit against the third party tort-feasor, the first money paid or recovered by the employee, or his representatives, belongs to the compensation carrier paying the compensation, and until it is paid in full, the employee, or his representatives, have no rights to any funds; nor have they any cause of action against the tort-feasor."

■ The court must know the amount of compensation "paid or assumed" before

judgment can be rendered in a recoupment suit. See Sunray Oil Corp. v. Allbritton, 5 Cir., 187 F.2d 475, 477 and cases cited therein. It has been held that it is proper to plead and prove the amount paid or assumed. Mitchell v. Dillingham, Tex.Civ. App., 22 S.W.2d 971, 972; Houston Gas & Fuel Co. v. Perry, 127 Tex. 102, 91 S.W.2d 1052, 1054; Kelley v. Summers, 10 Cir., 210 F.2d 665, 674; Brooks v. Lucky, Tex.Civ. App., 308 S.W.2d 273, 275 (RNRE) and Yeary v. Hinojosa, Tex.Civ.App., 307 S.W.2d 325 (RNRE). The amount of compensation assumed is not shown by the stipulation. It does not include an agreement as to facts from which the law can fix the amount. It does not show that there was no contest of plaintiff's contention that he was totally and permanently disabled, or as to his wage rate. The fact that plaintiff alleged he was practically paralyzed from his waist down, even if admitted, which is not shown, did not conclusively show total and permanent disability. The stipulation, or inference, in connection with the date of October, 1953, that the insurer then paid Thompson $9,527.75 is, admittedly, not true. What amount of liability, if any, and for what incapacity and duration and at what wage rate, was assumed?

Appellants contend that the facts are that on October 23, 1953, two weeks after Thompson's injury, the insurance carrier then merely started making weekly payments, which were terminated in December, 1956, by a judgment for a lump sum. It may be that Thompson intended nothing more than that payments were commenced in October, 1953, when he signed the stipulation that the insurance carrier then "assumed the payment of Workmen's Compensation Insurance benefits to" Thompson. Conspicuous by its absence is any statement that it then assumed "liability", or for what extent and duration of disability, or at what wage rate it agreed to pay Thompson compensation. When he signed it Thompson knew he had not already been paid $9,527.-75, as said stipulation, at least, implies. There is no stipulation that the insurance

carrier then agreed with the employee as to the extent or duration of his disability, or as to the applicable wage rate. The no-less indefinite statement that he was then paid $9,527.75 is admitted by appellees to not be true. Such an ambiguous agreement should not be permitted to deprive the injured employee and the insurance carrier of a hearing when they are present and contending that the insurer did not assume liability, and that the employee was not finally paid, until December, 1956, within two years of the time the individuals were made defendants.

We think the court erred in sustaining the exceptions and in dismissing the case. Other points presented are not controlling and need not arise upon another trial.

The judgment is reversed and the cause is remanded.