**GULF CONSTRUCTION COMPANY, INC. and Mid-Continent Casualty Company, Appellants,**

**v.**

**Calvin SELF, Individually and d/b/a Industrial Electric Company, Appellee.**

**GULF CONSTRUCTION COMPANY, INC. and Mid-Continent Casualty Company, Appellants,**

**v.**

**SHAW PLUMBING COMPANY, Appellee.**

Nos. 13–83–257–CV, 13–83–262–CV.

Court of Appeals of Texas, Corpus Christi.

June 21, 1984.

Rehearing Denied Aug. 31, 1984.

William R. Anderson, Jr., Sorrell, Anderson & Sorrell, Corpus Christi, for appellants.

Richard J. Hatch, Mahoney, Shaffer, Hatch & Layton, Corpus Christi, for appellees.

Before NYE, C.J., and UTTER, and YOUNG, JJ.

## OPINION

UTTER, Justice.

This is an appeal of two separate lawsuits which were tried jointly by agreement of all parties before the Honorable Rachel Littlejohn sitting as judge of the 156th and 36th District Courts of San Patricio County. Each case involved a suit by a subcontractor against a general contractor and its bonding company to recover payment for labor and materials furnished by the subcontractors to the general contractor. The parties waived a jury trial, and the case was tried to the court. Separate judgments were rendered against appellants in favor of each appellee-subcontractor. From such separate judgments, appellants appeal. We affirm the judgments of the trial court.

Appellant Gulf Construction Company, Inc., as general contractor, entered into two contracts with Good Hope Chemical Corporation, as owner, for the construction of various buildings to be located at Good Hope Chemical's plant site near Ingleside in San Patricio County. A performance and payment bond was executed by appellant Mid Continent Casualty as surety for Gulf Construction.

Appellant Gulf Construction then entered into three separate subcontracts with each of the appellees, Shaw Plumbing Company and Calvin Self, individually and d/b/a Industrial Electric Company. During the construction of the project, the owner, Good Hope Chemical, encountered financial problems and directed that all work at the plant site cease. After they were ordered to stop their work, the subcontractors each demanded that Gulf Construction pay the balance owed for the work performed. After they each made their demands, the subcontractors filed mechanic's and materialman's liens after giving the appropriate notice. Also, the subcontractors perfected their claims on the performance and payment bond furnished by appellant Gulf Construction and executed by appellant Mid Continent Casualty Company as surety. When the general contractor, Gulf

Construction, refused and failed to pay the balance owed to each of the subcontractors, the subcontractors, Shaw Plumbing and Self, filed suit. Appellants defended against the subcontractors' claims on the basis of the ninth paragraph of the subcontracts which reads as follows:

"Ninth. When the owner or his representative advances or pays the general contractor, the general contractor shall be liable for and obligated to pay the sub-contractor up to the amount or percentage recognized and approved for payment by the owner's representative less the retainage required under the terms of the prime contract. Under no circumstances shall the general contractor be obligated or required to advance or make payments to the sub-contractor until the funds have been advanced or paid by the owner or his representative to the general contractor."

It was the position of appellants that, since the owner, Good Hope Chemical, had filed for bankruptcy and was unable to pay appellant, appellant Gulf Construction was under no obligation, pursuant to the ninth paragraph of the subcontracts, to pay the balance owed to each of the subcontractors.

Resolution of the issues presented in appellant's first through sixth points of error on appeal depends on the construction of the language of the ninth paragraph of the subcontracts in question as either (1) a condition precedent to Gulf Construction's obligation to pay the balance owed to each subcontractor or (2) merely a covenant dealing with the "terms of payment" or "manner of payment."

A condition precedent may be either a condition to the formation of a contract or to an obligation to perform an existing agreement. Conditions may, therefore, relate either to the formation of contracts or liability under them. *Hohenberg Brothers Company v. George E. Gibbons & Co.*, 537 S.W.2d 1 (Tex.1976). Conditions precedent to an obligation to perform are those acts or events which occur subsequently to the making of the contract that must occur before there is a right to immediate performance and before there is a breach of contractual duty. *Ibid.* While no particular words are necessary for the existence of a condition, such terms as "if," "provide that," "on condition that," or some other phrase that conditions performance usually connote an intent for a condition rather than a promise. In the absence of such a limiting clause, whether a certain contractual provision is a condition, rather than a promise, must be gathered from the contract as a whole and from the intent of the parties. *Ibid.* The Texas Supreme Court in *Citizens National Bank in Abilene v. Texas and Pacific Railway Company*, 136 Tex. 333, 150 S.W.2d 1003 (1941) stated:

It is the duty of the Court, in determining the meaning and intent of a contract, to look to the entire instrument; that is, the contract must be examined from its four corners. Stated in another way, the contract must be considered and construed as an entire instrument, and all of its provisions must be considered and construed together. It is not usually proper to consider a single paragraph, clause, or provision by itself, to ascertain its meaning. To the contrary, each and every part of the contract must be construed and considered with ever other part, so that the effect or meaning on any other part may be determined.

However, where the intent of the parties is doubtful or where a condition would impose an absurd or impossible result, then the agreement should be interpreted as creating a covenant rather than a condition. *Hohenberg Brothers Co. v. George E. Gibbons & Company*, 537 S.W.2d 1 (Tex.1976); *Citizens National Bank in Abilene v. Texas and Pacific Railway Company*, 150 S.W.2d 1003 (Tex.1941). Also, it is a rule of construction that a forfeiture, by finding a condition precedent, is to be avoided when possible under another reasonable reading of the contract. *Schwarz-Jordan, Inc. of Houston v. Delisle Construction Company*, 569 S.W.2d 878 (Tex.1978). "Because of their harshness and operation,

conditions are not favorites of the law." *Sirtex Oil Industries, Inc. v. Erigan,* 403 S.W.2d 784 (Tex.1966). The rule, as announced in *Henshaw v. Texas National Resources Foundation,* 216 S.W.2d 566 (Tex.1949), is that:

> Since forfeitures are not favored, courts are inclined to construe the provisions in a contract as covenants rather than as conditions. If the terms of the contract are fairly susceptible of an interpretation which will prevent a forfeiture, they will be so construed.

■ Generally, a writing is construed most strictly against its author and in such a manner as to reach a reasonable result consistent with the apparent intention of the parties. *Republic National Bank of Dallas v. Northwest National Bank of Fort Worth,* 578 S.W.2d 109 (Tex.1978).

■ The first sentence of the ninth paragraph of the subcontract in question, by itself, does not set forth a condition precedent to appellant's obligation to make payment but only utilizes language similar to that in contractual provisions construed in *Thos. J. Dyer Company v. Bishop International Engineering, Inc.,* 303 F.2d 655 (6th Cir.1962); *Prickett v. Lendell Builders, Inc.,* 572 S.W.2d 57 (Tex.Civ.App.—Eastland 1978, no writ); *Wisznia v. Wilcox,* 438 S.W.2d 874 (Tex.Civ.App.—Corpus Christi 1909, writ ref'd. n.r.e.); and *Mignot v. Parkhill,* 237 Or. 450, 391 P.2d 755 (1964), wherein the courts held that such language set forth only a covenant regarding "terms of payment" or "manner of payment" and not a condition precedent. However, the additional question presented is: Does the second sentence of the ninth paragraph which provides that "Under no circumstances shall the general contractor be obligated or required to advance or make payments to the sub-contractor until the funds have been advanced or paid by the owner or his representative to the general contractor," when read in context within the entire contract, create a condition precedent or does it modify or explain the preceding sentence as to "terms of payment" or "manner of payment?"

In *Thos. J. Dyer Company v. Bishop International Engineering Company,* supra, the United States Sixth Court of Appeals was called upon to construe a provision in a subcontract which provided that no payment was due the subcontractor until five days after the owner of the construction project made payment to the general contractor. The general contractor had not been paid by the owner and contended that, since it had not been paid, the condition precedent to his obligation to make payment had not yet been met; and, hence, it should not be subject to any liability. In rejecting the general contractor's claim, the United States Sixth Court of Appeals stated:

> It is, of course, basic in the construction business for the general contractor on a construction project of any magnitude to expect to be paid in full by the owner for the labor and material he puts into the project. He would not remain long in business unless such was his intention and such intention was accomplished. That is a fundamental concept of doing business with another. The solvency of the owner is a credit risk necessarily incurred by the general contractor, but various legal and contractual provisions, such as mechanics liens, and installment payments, are used to reduce these to a minimum. These evidence the intention of the parties that the contractor be paid even though the owner may ultimately become insolvent. This expectation and intention of being paid is even more pronounced in the case of a subcontractor whose contract is with the general contractor, not with the owner. In addition to his mechanic's lien, he is primarily interested in the solvency of the general contractor with whom he has contracted. Normally and legally, the insolvency of the owner will not defeat the claim of the subcontractor against the general contractor. Accordingly, in order to transfer this normal credit risk incurred by the general contractor from the general contractor to the subcontractor, the contract between the general

contractor and the subcontractor should contain an express condition clearly showing that to be the intention of the parties.

The Court of Appeals for the Sixth Circuit held that, in accordance with "the normal construction of the relationship of the parties," said provision did not shift the normal credit risk from the general contractor to the subcontractor and that the provision was a reasonable provision designed to postpone payment for reasonable period of time after the work was completed, during which time the general contractor would be afforded the opportunity of procuring from the owner the funds necessary to pay the subcontractor. Furthermore, the United States Court of Appeals held that to construe the provision as requiring the subcontractor to wait to be paid for an indefinite time until the general contractor has been paid by the owner, which may never occur, is to give it an unreasonable construction which the parties did not intend at the time the subcontract was entered into.

In *Mignot v. Parkhill,* the Oregon Supreme Court construed the following subcontract provision which is similar to the second sentence of the ninth paragraph in question:

> "It is fully understood by and between the parties hereto that the contractor [defendant] shall not be obligated to pay subcontractor [plaintiff] for any of the work until such time as contractor has himself received the money from Bate Lumber Company."

As in the instant case, the above-quoted provision in *Mignot* was followed by an unconditional agreement to pay a certain amount to the subcontractor as consideration for the subcontractor's performance under the contract. The Oregon Supreme Court construed the contractual provision in the following manner:

> We take the contract at its four corners. The defendant's engagement to pay the stipulated consideration is expressed in unconditional terms and the provision in question, in our opinion, does no more than affect the time of payment.

In unambiguous language, the defendant agreed to pay designated sums, not upon receiving the money from Bate Lumber Co., but upon completion of various portions of the work on specified days, subject only to approval by the forest service representative. The contract does not state that the defendant shall not be obligated if the money is not received from Bate Lumber Company nor that payment shall be made to plaintiff "out of" funds received by defendant from Bate Lumber Company (as in so many cases holding the provision a condition precedent) but that defendant shall not be obligated *"until such time as"* the money is received by him. The clause is in the nature of a modification of the time provisions which immediately precede it and is followed by an unconditional agreement of the defendant to pay plaintiff $123,700 in consideration of latter's prompt and faithful performance of the work.

■ As in *Mignot,* we hold that the contract in question does not state that Gulf Construction shall not be obligated *if* the money is not received from the owner, Good Hope Chemical, nor that the payment shall be made to the subcontractors "out of" funds received by Gulf Construction but that Gulf Construction shall not be obligated or required to make payments *until* the money has been received by the owner. The second sentence of the ninth paragraph is in the nature of a modification of the time provision which immediately precedes it in the first sentence of the ninth paragraph.

■ Furthermore, we note that the following of the trial court's findings of law filed in support of its judgment are consistent with a reasonable interpretation of the above-quoted language of *Thos. J. Dyer Company,* as applied to the instant case: (1) The Court finds as a matter of law that the risk of non-payment by an owner on a construction contract rests on the contractor who contracts with such owner rather than on a subcontractor who has no privity of contract with the owner.

(2) The court finds as a matter of law that the risk of non-payment by the owner on a construction contract is not shifted from the contractor to the subcontractor unless there is a clear, unequivocal and expressed agreement between the parties to do so.

(3) The court finds as a matter of law that there was no intent on the part of the parties to the subcontract of the risk of non-payment by the owner (Good Hope Chemical Corp.) should be shifted from the contractor (Gulf Construction Company, Inc.) to the subcontractors (Calvin Self, Individually and d/b/a Industrial Electric Company, and Shaw Plumbing Company).

(4) The court finds as a matter of law that the ninth paragraph of the subcontracts between the parties does not clearly, unequivocally and expressly shift the risk of non-payment by the owner from the contractor (Gulf Construction Company) to the subcontractors (Calvin Self, Individually and d/b/a Industrial Electric Company and Shaw Plumbing Company).

We hold that the ninth paragraph of the subcontracts merely provides a covenant dealing with "terms of payment" or "manner of payment" rather than a condition precedent. Appellants' first through sixth points of error are overruled.

In their seventh through tenth points of error, appellants complain of the basis for the amounts for which the judgments were entered against them. In effect, appellants urge that the trial court erred in refusing to admit certain oral testimony and instruments as offered by appellant in a bill of exceptions which contain information regarding labor and material costs and estimations of the portions of the jobs completed by appellants on which the amounts in the judgments should have been based. Appellees' counsel objected to the admission of this evidence on the ground that the figures contained within the oral testimony and instruments were contrary to the stipulations agreed upon by the parties. The court sustained the objection.

A stipulation constitutes a contract between parties and between the parties and the trial court; generally, such contracts are binding on the parties. *Keller Industries, Inc. v. Reeves*, 656 S.W.2d 221 (Tex.Civ.App.—Austin 1983, writ ref'd. n.r.e.). The courts favor stipulations to expedite litigation, and, generally, valid stipulations are binding on the parties and the trial court. *New v. First National Bank of Midland*, 476 S.W.2d 121 (Tex.Civ. App.—El Paso 1971, writ ref'd. n.r.e.). To be binding on the trial court, agreements made between opposing counsel must be presented in evidence and must be in conformity with TEX.R.CIV.P. 11 relating to written agreements between attorneys or parties. *Thompson v. Kirkland*, 422 S.W.2d 258 (Tex.Civ.App.—Texarkana 1967, no writ). Setting aside a stipulation is ordinarily within the discretion of the trial court. *New*, 476 S.W.2d at p. 124; *Thompson v. Graham*, 318 S.W.2d 102 (Tex.Civ.App.—Eastland 1958, writ ref'd. n.r.e.).

Written stipulations were agreed to by the parties and filed on November 1, 1978, in conformity with TEX.R.CIV.P. 11. Attached to the stipulations which were filed were certain exhibits which were incorporated into the agreement. *See Southwestern Life Insurance Co. v. Houston*, 121 S.W.2d 619 (Tex.Civ.App.—Fort Worth 1938, writ ref'd.). The stipulations and incorporated exhibits were properly admitted into evidence. Consequently, we hold that the trial court did not err in sustaining appellees' objection to the evidence offered by appellant which would have been contrary to the agreed stipulations and that, based upon our review of the stipulations and incorporated exhibits and of the judgments, the trial court did not err in entering judgment for at least the amounts contained in the judgments; however, obviously a clerical and/or mathematical error was made in Shaw Plumbing's judgment in that the portion of the judgment awarding Shaw Plumbing Company $36,882.05 should be increased to $40,726.84. Appellants' seventh through tenth points of error are overruled.

■ In their eleventh point of error, appellants assert that the trial court erred in sustaining appellees' objection to the introduction of appellants' Exhibit No. 1, which was purported to be a written summary of certain accounting records that was prepared by the company's bookkeepers. An objection was made by appellees to the introduction of Exhibit No. 1, the written summary of accounts, on the grounds that it was "not the best evidence" and that it was "contrary to the stipulations in the case." The trial court sustained the objection, and Exhibit No. 1, the written summary of accounts, was offered by way of bill of exceptions. After having reviewed the exhibit in the bill of exceptions and, in light of the agreed stipulations, we hold that the trial court did not abuse its discretion in sustaining appellees' objection. Appellants' eleventh point of error is overruled.

■ In their twelfth point of error, appellants assert that "[t]he trial court erred in granting judgment for appellees when appellees did not prove that the services performed and goods used were reasonable costs for such goods and services in San Patricio County, Texas." Appellants basically argue that appellees failed to prove up a basic portion of their proof on their suit on the account, i.e., that the work done and materials furnished by each appellee was that reasonable market value of such property at the place and time it was done, citing *Peter Salpeter Energy Co., Inc. v. Crystal Oil Company*, 524 S.W.2d 383 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd. n.r.e.). Appellants allege that the only proof offered was that the work was done in a good and workmanlike manner and that such proof is not proof of the reasonable value of the property at the time and place it was done. However, in making its argument, appellants seem to totally ignore the stipulations agreed upon by the parties which set forth the particular amounts owed by Gulf Construction Company. Appellants' twelfth point of error is overruled.

■ In their thirteenth and fourteenth points of error, appellants assert that the trial court erred in awarding prejudgment interest to appellees. Appellants argue that, because the trial court commenced the accrual of prejudgment interest from the first day of January after the termination of the work, the trial court apparently awarded such prejudgment interest under TEX.REV.CIV.STAT.ANN. art. 5069–1.03 (Vernon 1971) (which was then in effect) upon the basis that the debt owed was an open account; whereas, the transaction between the parties was not an open account. We agree that the trial court could not award prejudgment interest on the basis that appellees' claim was an open account. However, prejudgment interest can also be awarded as damages in certain instances under equitable principles as compensation for the use or detention of money. *See Phillips Petroleum Co. v. Stahl Petroleum Company*, 569 S.W.2d 480 (Tex.1978); *Miles v. Royal Indemnity Company*, 589 S.W.2d 725 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd. n.r.e.); *Larcon Petroleum, Inc. v. Autrotronics Systems*, 576 S.W.2d 873 (Tex.Civ.App.—Houston [14th Dist.] 1979, no writ).

■ Gulf Construction did withhold substantial payments for work performed from the subcontractors after demands were made; therefore, we cannot find an abuse of discretion of the trial court in making its award of prejudgment interest on equitable grounds by adopting the statutory scheme for awarding prejudgment interest for an open account under Art. 5069–1.03. *See Phillips Petroleum Company*, 569 S.W.2d at pp. 485–488; *Miles*, 589 S.W.2d at pp. 735–736; *Larcon Petroleum, Inc.*, 576 S.W.2d at p. 785. We overrule appellants' thirteenth and fourteenth points of error.

The judgment of the trial court in favor of appellee Shaw is MODIFIED to reflect the correct total judgment against Gulf Construction Company in the amount of $40,726.84, and, as MODIFIED, both judgments against Gulf Construction Company,

Inc., and Mid-Continent Casualty Company are AFFIRMED.