

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-09-00152-CV

JAN LUCAS D/B/A JATO OIL AND
GAS

APPELLANT

V.

ROGER L. COOMER, VERNA E.
COOMER, AND PHIL KING D/B/A
KING AND KING

APPELLEES

----------

FROM THE 43RD DISTRICT COURT OF PARKER COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

This is an appeal from a summary judgment in an oil and gas case.[2]

Appellees Roger L. Coomer, Verna E. Coomer, and Phil King d/b/a/ King and

---

[1]*See* Tex. R. App. P. 47.4.

King filed a motion for summary judgment against Appellant Jan Lucas d/b/a Jato Oil and Gas. In granting Appellees' motion for summary judgment, the trial court ordered Lucas to pay the Coomers a lease bonus of $176,000 and King a finder's fee of $16,000. In three issues, Lucas argues that the trial court erred by granting summary judgment because (1) Appellees failed to present evidence that the lease was accepted by Lucas, (2) Appellees failed to bring forward evidence that conditions precedent to the effectiveness of the lease had been satisfied, and (3) an ambiguity in the lease created a genuine issue of material fact. We will affirm.

## II. BACKGROUND FACTS

The Coomers own approximately 160 acres of land in Parker County, Texas. They asked King to inquire into whether any production companies would be interested in leasing the mineral rights to their property. Robert Palmer, who is not a party to the present suit, then initiated communication between King and Lucas. Palmer told King that Lucas had the ability to "lease the mineral rights to the Coomers' property."

---

[2]Although this case was submitted on October 1, 2009, it was not assigned to this author until November 2, 2010.

Lucas and King then entered into negotiations to lease the minerals on the Coomers' property. King negotiated the amount of bonus, royalty fee, and finder's fee. After the terms of the lease had been agreed upon, King sent Lucas a proposed lease. Lucas told King that she could not agree to the inclusion of the bonus amount and finder's fee in the lease, but she agreed to have those terms included in a Supplemental Addendum to the lease. King then prepared a Supplemental Addendum and sent Lucas the updated lease and Supplemental Addendum.

The lease contains a provision stating that "[t]his lease shall be effective as to each Lessor [the Coomers] on execution hereof as to his or her interest and shall be binding on those signing." The lease contains signature blocks for the Coomers and for Jato. Additionally, Exhibit "A," attached to the lease, states that "[t]he following provisions shall supplement the printed provisions of the Lease; and, in the event of any conflict between the following supplemental provisions and the provisions of the printed Lease, the supplemental provisions of this Exhibit 'A' shall prevail and control." The provision upon which Lucas relies in this appeal is paragraph 20 of Exhibit "A." Paragraph 20 reads as follows,

> 20. *Acceptance by Lessee.* Upon acceptance of this agreement, a representative of the Lessee shall initial each page of the Lease and of this Addendum and file the original of record in the county records of Parker County, Texas and provide Lessor's Attorney, [King], a certified copy of such lease no later than 4:30 P.M. November ___, 2007. Failure to so provide [sic] then this offer shall be rescinded

3

and the lease offer shall be ipso facto withdrawn. Timely filing and delivery of the lease shall constitute acceptance by the Lessee. Failure to file and deliver the certified copy of the lease shall be prima facie proof that the lease was declined by the Lessee.

The date by which Jato was required to provide King with a certified copy of the lease was left blank. Directly below that provision are "SIGNED FOR IDENTIFICATION" signature blocks for the Coomers as lessors and for Jato as lessee.

The Supplemental Addendum to the lease contains the bonus and finder's fee provisions. It states, "Upon execution of this lease, Lessee shall pay Lessor as a bonus the sum of $1,100.00 per total mineral acre leased." It also provides that "Lessee shall pay to [King] the additional undivided sum of $100.00 [per acre] as a finder's fee. By execution of this lease, Lessor consent[s] and . . . agrees to the payment of said finder's fee." This addendum also has "SIGNED FOR IDENTIFICATION" signature blocks for the Coomers as lessors and for Jato as lessee.

After receiving the updated lease and Supplemental Addendum, Lucas informed King via email on November 26, 2007 that she had received the updated lease, had gotten it notarized, and would mail it back to him that day.[3] After King did not receive the signed lease, he emailed Lucas requesting

---

[3]Appellees attached to their motion for summary judgment emails between Lucas and King.

4

verification that she had mailed the lease because he was "concerned it was lost in the mail." Lucas responded, "I had it dropped off at your office on 11-27 as we missed the mail on Monday."

Lucas stated in her deposition that she was out of town when she received the updated lease and that she had instructed her son and landman, Phillip Sterling, to take the lease documents to King's office. Lucas could not remember if she had asked Sterling to sign the lease or if Appellees just had him sign the lease when he was at King's office. She stated that Jason Potts had driven Sterling to King's office to drop off the signed lease.

Sterling's signature, as landman for Jato, appears in the signature blocks for lessee on the lease, Exhibit "A" to the lease, and the Supplemental Addendum. Sterling's signature on the lease was notarized by Jason Potts on November 27, 2007. Sterling did not initial each page of the lease in accordance with paragraph 20 of Exhibit "A." The Coomers' signatures appear on the signature blocks for lessors on the lease, Exhibit "A" to the lease, and the Supplemental Addendum. Their signatures on the lease were notarized by King's legal assistant on December 3, 2007.

King's legal assistant emailed Lucas on December 6, 2007, stating that King would record the original lease and requesting that the bonus check be payable to the Coomers and the finder's fee check be payable to King. On

January 2, 2008, King filed the executed lease, including Exhibit "A," in the Official Records of Parker County.

The Coomers never received their bonus, and King never received his finder's fee. On January 22, 2008, Appellees sent a written demand to Lucas for payment of the Coomers' bonus and King's finder's fee. On May 21, 2008, King's attorney sent a subsequent written demand to Lucas for the payment of the bonus and finder's fee, as well as notice of Appellees' intent to file a lawsuit if the fees were not paid.

On June 11, 2008, Appellees filed their original petition. Appellees then filed their motion for summary judgment alleging that Lucas had breached the contract and that no genuine issue of material fact exists as to their breach of contract claim. In the response to the motion for summary judgment, Lucas asserted that Appellees provided no evidence that she had accepted the lease under paragraph 20 of Exhibit "A." After a hearing, the trial court granted Appellees' motion for summary judgment, finding that there was no genuine issue of material fact as to Appellees' breach of contract claim and that the lease was an enforceable contract. This appeal followed.

## III. STANDARD OF REVIEW

In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of

material fact exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We review a summary judgment de novo. *Mann Frankfort,* 289 S.W.3d at 848 (Tex. 2009).

We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort*, 289 S.W.3d at 848. We must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented. *See Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 568 (Tex. 2006); *City of Keller v. Wilson*, 168 S.W.3d 802, 822–24 (Tex. 2005).

The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).

## IV. SUMMARY JUDGMENT WAS PROPER

7

Lucas's three points on appeal center around paragraph 20 of Exhibit "A" to the lease. That paragraph provides that "upon acceptance" of the lease, Lucas, as lessee, shall initial each page of the lease and Exhibit "A," file them in the county records of Parker County, and provide King with a certified copy of the lease by "4:30 P.M. November ___, 2007." Paragraph 20 further specifies that if Lucas fails to provide King with a certified copy of the lease, "then [the] offer shall be rescinded and the lease offer shall be ipso facto withdrawn." According to paragraph 20, "[t]imely filing and delivery of the lease shall constitute acceptance by [Lucas]," and "[f]ailure to file and deliver the certified copy of the lease shall be prima facie proof that the lease was declined by the Lessee." We will address each of Lucas's points separately below.

## A. Lucas's Acceptance of the Lease

Lucas argues in her first issue that Appellees failed to present evidence that she accepted the lease in the manner set forth in paragraph 20 of Exhibit "A." According to Lucas, she could only accept the lease by (1) initialing each page of the lease and Exhibit "A," (2) filing the lease in the Parker County records, and (3) providing King with a certified copy of the lease.

A valid contract exists when the following elements are present: (1) an offer, (2) an acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Williams v. Unifund CCR Partners Assignee of Citibank*, 264 S.W.3d 231, 236 (Tex.

8

App.—Houston [1st Dist.] 2008, no pet.). Unless otherwise indicated, an offer may be accepted in any manner reasonable under the circumstances. *Horton v. DaimlerChrysler Fin. Servs. Ams., L.L.C.,* 262 S.W.3d 1, 6 (Tex. App.—Texarkana 2008, no pet.) (citing Restatement (Second) of Contracts § 30 (1981)). But when an offer prescribes the manner of acceptance, its terms in this respect must be complied with to create a contract. *Town of Lindsay v. Cooke County Elec. Coop. Ass'n*, 502 S.W.2d 117, 118 (Tex. 1973), *cert. denied*, 416 U.S. 970 (1974). The use of a different method of acceptance by the offeree will not be effectual unless the original offerors thereafter manifests their assent to the other party. *Id.*

Here, paragraph 20 provides the manner by which Lucas was to accept the lease: "Timely filing and delivery of the lease shall constitute acceptance by the lessee." Although strict compliance with the manner of acceptance is generally required to form a binding contract, Lucas accepted the lease in a different manner—by having Sterling sign the lease documents on behalf of Jato (without initialing each page) and deliver the original lease (rather than a certified copy) to King without filing it. *See id.* And the Coomers manifested their assent to Lucas's "different" manner of acceptance by subsequently signing the documents as lessees, notifying Lucas that they would file the lease, and filing the lease in the Official Records of Parker County. *See Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995) (holding that offeror's letter to offerree indicating a consummated settlement agreement showed his assent to offeree's alteration of

9

the mode of acceptance set out in original offer). Consequently, the summary judgment evidence establishes that Lucas accepted the lease. *See Town of Lindsay*, 502 S.W.2d at 118.

Taking as true all evidence favorable to Lucas, as the nonmovant, and indulging every reasonable inference and resolving any doubts in her favor, we hold that the summary judgment evidence establishes that she accepted the Commers' offer, albeit in a different manner than that specified in the lease, agreeing to be bound by the terms of the lease, and that the Coomers assented to Lucas's alternative acceptance of the lease. *See 20801, Inc.*, 249 S.W.3d at 399; *Sw. Elec. Power Co.*, 73 S.W.3d at 215; *see also Williams*, 264 S.W.3d at 236. We overrule Lucas's first issue.

## B. Terms of Acceptance Not Conditions Precedent

In her second issue, Lucas argues, alternatively, that the provisions of paragraph 20—requiring her, upon acceptance, to initial each page of the lease, file it, and give a copy to King—were conditions precedent to the lease and that Appellees failed to present evidence that those conditions were satisfied.

A condition precedent is an event that must happen or an act that must be performed before a right can accrue to enforce an obligation. *Centex Corp. v. Dalton*, 840 S.W.2d 952, 956 (Tex. 1992); *Calce v. Dorado Exploration, Inc.*, 309 S.W.3d 719, 742 (Tex. App.—Dallas 2010, no pet.). A condition precedent relating to the formation of a contract is a condition that must be performed before the parties' agreement will become a binding, enforceable contract or a

10

condition that must be fulfilled before a duty to perform an existing contract arises. *Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex. 1976). A covenant, as distinguished from a condition precedent, is an agreement to act or refrain from acting in a certain way. *Landscape Design & Constr., Inc. v. Harold Thomas Excavating, Inc.*, 604 S.W.2d 374, 376 (Tex. Civ. App.—Dallas 1980, writ ref'd n.r.e.).

In order to make performance specifically conditional, a term such as "if," "provided that," "on condition that," or some similar phrase of conditional language must normally be included. *Criswell v. European Crossroads Shopping Ctr., Ltd.*, 792 S.W.2d 945, 948 (Tex. 1990) (op. on reh'g). If no such language is used, the terms will be construed as a covenant in order to prevent a forfeiture. *Id.*; *Calce*, 309 S.W.3d at 742. Although there is no requirement that such phrases be utilized, their absence is probative of the parties' intention that a promise be made, rather than a condition imposed. *Hohenberg Bros. Co.*, 537 S.W.2d at 3; *Gulf Constr. Co. v. Self*, 676 S.W.2d 624, 627 (Tex. App.—Corpus Christi 1984, writ ref'd n.r.e.). When the intent of the parties is doubtful or when a condition would impose an absurd or impossible result, the agreement will not be interpreted as creating a condition. *Calce*, 309 S.W.3d at 742; *see also Criswell*, 792 S.W.2d at 948; *Hohenberg Bros. Co.*, 537 S.W.2d at 3. As forfeitures are not favored, finding a condition precedent should be avoided if another reasonable reading of the contract is possible. *Criswell*, 792 S.W.2d at

11

948; *Schwarz-Jordan, Inc. of Houston v. Delisle Constr. Co.*, 569 S.W.2d 878, 881 (Tex. 1978).

Paragraph 20's requirements that "upon acceptance," a representative of Jato initial each page of the lease, record an original in the county records, and deliver a copy to King are not conditions precedent to the effectiveness of the lease; rather, they are covenants that Jato was to perform "*upon acceptance*." *Landscape Design & Constr., Inc.*, 604 S.W.2d at 376. Paragraph 20 does not contain conditional language such as "if," "provided that," or "on condition that." *See Criswell*, 792 S.W.2d at 948. Rather, it sets out actions Jato promised to take upon acceptance of the terms of the lease. To accept Lucas's contention that initialing each page of the lease, filing the original in the official records of Parker County, and delivering a certified copy to King were conditions precedent to the validity of the lease would lead to an absurd result when the summary judgment evidence shows that Lucas accepted the terms of the lease documents and that, at Lucas's direction, Sterling executed the lease on behalf of Jato and delivered the executed lease to the Coomers. *See Hohenberg Bros. Co.*, 537 S.W.2d at 3; *Calce*, 309 S.W.3d at 742, 747*; see also Criswell*, 792 S.W.2d at 948 (explaining that courts must avoid a construction of the contract that would impose a condition precedent creating a forfeiture if another reasonable reading of the contract is possible). The summary judgment evidence shows that Lucas informed King via email that she had received the lease, had gotten it notarized, and would mail it to him; that Sterling signed the lease documents on behalf of

12

Jato, had his signature notarized, and, at Lucas's direction, delivered the signed documents to King's office; that Lucas informed King via email that she had the executed lease delivered to his office on November 27, 2007; that King's legal assistant informed Lucas via email on December 6, 2007 that King would record the original lease; and that King filed the executed lease, including Exhibit "A," in the Official Records of Parker County. To allow Lucas to escape the binding effect of the lease documents would be absurd under the facts of this case, and it is highly doubtful that the parties would have intended such a harsh result. *See Hohenberg Bros. Co.*, 537 S.W.2d at 3 (explaining that when the intent of the parties is doubtful or when a condition would impose an absurd result, an agreement will not be interpreted as creating a condition).

Taking as true all evidence favorable to Lucas, as the nonmovant, and indulging every reasonable inference and resolving any doubts in her favor, we hold that the summary judgment evidence establishes that paragraph 20 of Exhibit "A" to the lease does not set forth conditions precedent to the validity of the lease. *See 20801, Inc.*, 249 S.W.3d at 399; *Sw. Elec. Power Co.,* 73 S.W.3d at 215. We overrule Lucas's second issue.

## C. Lease Not Ambiguous

In her third issue, Lucas argues that summary judgment was not proper because paragraph 20 is ambiguous.

When construing contracts and other written instruments, our primary concern is to ascertain the true intent of the parties as expressed in the

13

instrument. *NP Anderson Cotton Exch., L.P. v. Potter*, 230 S.W.3d 457, 463 (Tex. App.—Fort Worth 2007, no pet.). Lack of clarity does not create an ambiguity, and a contract is not ambiguous simply because the parties advance conflicting interpretations. *Universal Health Servs., Inc. v. Renaissance Women's Group, P.A.*, 121 S.W.3d 742, 746 (Tex. 2003); *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996). Rather, the issue of whether a contract is ambiguous is a question of law that must be decided by examining the contract as a whole in light of the circumstances present when the contract was entered into. *Universal Health*, 121 S.W.3d at 746. An ambiguity arises only after the application of established rules of construction leaves an agreement susceptible to more than one meaning. *See DeWitt County Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999). But if the contract can be given a certain or definite legal meaning, it is not ambiguous and should be construed as a matter of law. *Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex. 1997). "When the [contract] is not ambiguous on its face, extrinsic evidence may not be used to create an ambiguity." *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 745 (Tex. 1998); *see CenterPoint Energy Houston Elec., L.L.P. v. Old TJC Co.*, 177 S.W.3d 425, 431 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

In this case, Lucas appears to argue that an ambiguity exists because paragraph 20's requirements for her to *accept* the lease before she has any obligation to perform under the lease conflicts with the Supplemental

Addendum's requirement that she pay the bonus and finder's fee amounts "[u]pon *execution*" of the lease. [Emphasis added.] We see no ambiguity. As we explained above, paragraph 20 sets forth the manner in which Lucas was to accept the lease and the actions she promised to take upon acceptance—initial each page of the lease, file it, and provide a certified copy to King. The Supplemental Addendum sets forth the parties' agreement that King pay the Coomers a bonus fee and pay King a finder's fee in the sums agreed to by the parties. We refuse to split hairs when, looking at the contract as a whole, the parties clearly intended that, upon reaching an agreement and entering into the lease agreement, they be bound by its terms, including the requirement that Lucas pay the bonus and finder's fee provided for in the Supplemental Addendum. *See NP Anderson Cotton Exch., L.P.*, 230 S.W.3d at 463.

Taking as true all evidence favorable to Lucas, as the nonmovant, and indulging every reasonable inference and resolving any doubts in her favor, we hold that the lease is not ambiguous so as to preclude summary judgment. *See 20801, Inc.*, 249 S.W.3d at 399; *Sw. Elec. Power Co.,* 73 S.W.3d at 215. We overrule Lucas's third issue.

## V. CONCLUSION

Having overruled Lucas's three issues and having determined that Appellees conclusively proved that Lucas accepted the lease as a matter of law, that the provisions of paragraph 20 of Exhibit "A" to the lease are not conditions precedent to the validity of the lease, and that the lease is not ambiguous, and

15

because Lucas does not challenge summary judgment as to the remaining elements of Appellees' cause of action, we hold that the trial court did not err by granting summary judgment for Appellees. *See* Tex. R. App. P. 47.1; *City of Houston*, 589 S.W.2d at 678. We affirm the trial court's judgment.

SUE WALKER
JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and WALKER, JJ.

DAUPHINOT, J. filed a dissenting opinion.

DELIVERED: December 16, 2010



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-09-00152-CV

---

JAN LUCAS D/B/A JATO OIL AND GAS          APPELLANT

V.

ROGER L. COOMER, VERNA E. COOMER, AND PHIL KING D/B/A KING AND KING          APPELLEES

----------

FROM THE 43RD DISTRICT COURT OF PARKER COUNTY

----------

## DISSENTING MEMORANDUM OPINION[1]

----------

Paragraph 20 of the lease states that delivery and filing are required for Lucas to accept the lease. The lease further states that failure to file the lease is prima facie proof that Lucas did not accept the lease. Although the lease does not contain terms such as "if" or "on condition that," paragraph 20 does

---

[1]*See* Tex. R. App. P. 47.4.

specifically state that Lucas's failure to perform these conditions would constitute a rejection of the offer and would result in the offer being rescinded.[2] Paragraph 20 is therefore a condition precedent to contract formation.[3] As the parties moving for summary judgment on their breach of contract claim, the Coomers had the burden of proving that all conditions precedent had been satisfied.[4]

The lease does not state that Lucas herself must file the lease in order to indicate acceptance; it merely requires filing and is silent as to who must file it and how it must be filed. This provision makes no sense, however, if acceptance by *Lucas* could be demonstrated by the *Coomers* recording the lease. Because Lucas did not perform the conditions precedent, it is prima facie evidence that she rejected the offer expressed in the contract and addendum and, consequently, no contractual obligation on the part of either Lucas or the Coomers was ever created.

As the majority notes, despite the language of paragraph 20, Lucas could have by her actions demonstrated her waiver of the condition precedent and acceptance of the lease. Although a contract may set out in its terms the manner

---

[2]*See Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex. 1976).

[3]*See id.*

[4]*See Calce v. Dorado Exploration, Inc.*, 309 S.W.3d 719, 732 (Tex. App.—Dallas 2010, no pet.).

by which the parties indicate acceptance, a different manner of acceptance will nevertheless be effective if the offeror assents to it.[5]

In the case now before this court, the summary judgment evidence did not establish as a matter of law that Lucas had waived the condition precedent and accepted the contract by filing it or by performance. For that matter, the evidence did not establish as a matter of law that this provision was intended to benefit the Coomers; if it was not, they could not waive its effectiveness by assenting to a different method of acceptance.[6] Only Lucas could agree to waive its effect if it was intended to benefit her. Whether the provision was intended to benefit Lucas, and if so, whether Lucas's actions constitute a waiver of the condition precedent and, thus, acceptance of the lease are questions of fact. Because a genuine issue of material fact exists as to whether Lucas accepted the lease, I respectfully dissent.

LEE ANN DAUPHINOT
JUSTICE

DELIVERED: December 16, 2010

---

[5]*See Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995); *see also Horton v. DaimlerChrysler Fin. Servs. Ams., L.L.C.*, 262 S.W.3d 1, 6 (Tex. App.—Texarkana 2008, no pet.) (noting that "[i]t is well established that acceptance may be shown by conduct").

[6]*See Joiner v. Elrod*, 716 S.W.2d 606, 609 (Tex. App.—Corpus Christi 1986, no writ) ("[A] party can waive [contract] provisions *for his benefit*." (emphasis added)).

3