ACCEPTED
15-25-00058-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
9/30/2025 3:28 PM
CHRISTOPHER A. PRINE
CLERK

No. 15-25-00058-CV

# In the Court of Appeals
# for the Fifteenth Judicial District

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
9/30/2025 3:28:54 PM
CHRISTOPHER A. PRINE
Clerk

THE BOARD OF REGENTS OF
THE TEXAS A&M UNIVERSITY SYSTEM,

*Appellant,*

*v.*

BE&K BUILDING GROUP, LLC,

*Appellee.*

On Appeal from the
272nd Judicial District Court, Brazos County

## REPLY BRIEF FOR APPELLANT

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

WILLIAM R. PETERSON
Solicitor General

JACOB C. BEACH
Assistant Solicitor General
State Bar No. 24116083
Jacob.Beach@oag.texas.gov

Counsel for Appellant

# Identity of Parties and Counsel

**Appellant:**

The Board of Regents of the Texas A&M University System

**Appellate and Trial Counsel for Appellant:**

Ken Paxton
Brent Webster
William R. Peterson
Jacob C. Beach (lead counsel)
William H. Farrell

Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
(512) 936-6407
Jacob.Beach@oag.texas.gov

**Appellee:**

BE&K Building Group, LLC

**Appellate and Trial Counsel for Appellee:**

Frank A. Domino
Mehaffy Weber P.C.
2615 Calder Ave., Suite 800
Beaumont, Texas 77702
(409) 835-5011
Frankdomino@mehaffyweber.com

Thomas O. Crist
Benesch, Friedlander, Coplan & Arnoff, LLP
200 Public Sq., Suite 2300
Cleveland, Ohio 44114
(216) 363-4500
tcrist@beneschlaw.com

# Table of Contents

Identity of Parties and Counsel ................................................................. i

Index of Authorities ................................................................................ iii

Introduction ............................................................................................ 1

Argument ................................................................................................ 2

    I.   BE&K Misunderstands the Jurisdictional Standard. ................................. 2

        A.   Section 114.003 claims are not immune from evidentiary pleas. .......... 2

        B.   Neither *Pepper Lawson* nor the LGCCA change this outcome. ............ 8

    II.   BE&K Fails to Identify Evidence Supporting Jurisdiction. ........................ 13

        A.   Conditions precedent are relevant. ...................................................... 13

        B.   BE&K provides no evidence that it satisfied the conditions. ............. 23

    III.  The Failure to Provide Notice Requires Dismissal. ................................. 24

Prayer .................................................................................................... 28

Certificate of Compliance ...................................................................... 28

# Index of Authorities

**Page(s)**

**Cases:**

*Alamo Heights Indep. Sch. Dist. v. Clark*,
544 S.W.3d 755 (Tex. 2018) .............................................................. 3, 4

*BankDirect Cap. Fin., LLC v. Plasma Fab, LLC*,
519 S.W.3d 76 (Tex. 2017) .................................................................... 27

*Bd. of Regents of Univ. of Texas Sys. v. IDEXX Lab'ys*,
691 S.W.3d 438 (Tex. 2024) ............................................................. 18, 19

*Bland Indep. Sch. Dist. v. Blue*,
34 S.W.3d 547 (Tex. 2000) .............................................................. 4, 5, 9

*Calpine Producer Servs., LP v. Wiser Oil Co.*,
169 S.W.3d 783 (Tex. App.—Dallas 2005, no pet.) ...................................... 15, 16

*Endeavor Energy Res., L.P. v. Energen Res. Corp.*,
615 S.W.3d 144 (Tex. 2020).............................................................17, 18, 19

*FaulknerUSA, LP v. Alaron Supply Co.*,
322 S.W.3d 357 (Tex. App.—El Paso 2010, no pet.) .........................................16

*Garland Indep. Sch. Dist. v. Reeder Gen. Contractors, Inc.*,
2024 WL 1208304 (Tex. App.—Dallas Mar. 21, 2024, pet. denied) ........... 12, 13

*Gulf Constr. Co., Inc. v. Self*,
676 S.W.2d 624 (Tex. App.—Corpus Christi 1984, writ ref'd)................... 15, 16

*Hearts Bluff Game Ranch, Inc. v. State*,
381 S.W.3d 468 (Tex. 2012)................................................................. 3

*James Constr. Grp., LLC v. Westlake Chem. Corp.*,
650 S.W.3d 392 (Tex. 2022) ................................................................ 23

*Lakin Enters. v. Sebastian*,
2009 WL 428491 (Tex. App.—Dallas Feb. 23, 2009, no pet.) ..........................16

*Pepper Lawson Horizon International Group, LLC v. Texas Southern University*,
669 S.W.3d 205 (Tex. 2023) ........................1, 2, 3, 6, 7, 8, 9, 10, 11, 13, 14, 15, 22

*Prairie View A&M Univ. v. Chatha*,
381 S.W.3d 500 (Tex. 2012)............................................................. 26, 27

*Rattray v. City of Brownsville*,
662 S.W.3d 860 (Tex. 2023) ................................................................19

*Ross v. St. Luke's Episcopal Hosp.*,
462 S.W.3d 496 (Tex. 2015) ............................................................... 18

*Rusk State Hosp. v. Black*,
392 S.W.3d 88 (Tex. 2012) ...............................................................19

*San Antonio River Auth. v. Austin Bridge & Rd., L.P.*,
601 S.W.3d 616 (Tex. 2020) ............................................................ 25

*San Jacinto River Auth. v. City of Conroe*,
688 S.W.3d 124 (Tex. 2024) ...................................................... 25, 26

*Sheldon L. Pollack Corp. v. Falcon Indus., Inc.*
794 S.W.2d 380 (Tex. App.—Corpus Christi 1990, writ denied) ......................15

*State v. Lueck*,
290 S.W.3d 876 (Tex. 2009) .............................................. 3, 5, 6, 7, 8

*Tex. Dep't of Parks & Wildlife v. Miranda*,
55 S.W.3d 648 (Tex. App.—San Antonio 2001) ................................. 5

*Tex. Dep't of Parks & Wildlife v. Miranda*,
133 S.W.3d 217 (Tex. 2004) ........................ 1, 2-3, 4, 5, 8, 9, 10, 12, 20

*Tex. S. Univ. v. Westwood Restoration, LLC*,
2025 WL 2078670 (Tex. App.–[15th Dist.] July 2025, no pet.) ......... 4, 10, 24, 25

*Town of Shady Shores v. Swanson*,
590 S.W.3d 544 (Tex. 2019) .........................................2, 3, 4, 24

*Zachry Constr. Corp. v. Port of Hous. Auth. of Harris Cnty.*,
449 S.W.3d 98 (Tex. 2014) ......................................................... 11, 12

**Statutes and Rules:**

Local Gov't Code § 271.152 ...............................................................11

Tex. Civ. Prac. & Rem. Code:
§ 114.001(3) ...................................................................................... 7
§ 114.003 ............................................................................ 1, 3, 6, 7, 11
§ 114.004 ...............................................................................6, 7, 8
§ 114.006 ...............................................................................6, 7, 8
§ 114.011 ...............................................................................6, 7, 8

Tex. Gov't Code:
§ 311.034 ...................................................................................... 26, 27
§ 554.0035 ...................................................................................... 5
§ 2260.052 ...................................................................................... 26

**Other Authorities:**

Dale Wainwright & Lindsay Hagans, *Pleas to the Jurisdiction*, 72 The
Advoc. (Texas) (2015) ...................................................................... 4

## INTRODUCTION

BE&K asks this Court to hold that jurisdiction attaches the moment a contractor utters "breach," no matter what the record shows. But sovereign immunity is not a pleading game or a rhetoric exercise. It is a constitutional limit, lifted only when the Legislature says so—and only within those carefully defined terms. BE&K must show that its case falls within this narrow consent.

That principle resolves this dispute. BE&K alleged breach—but when TAMUS put those allegations to the test, nothing stood behind them. No documentation that it satisfied conditions precedent. No completion of work that would trigger payment. No notice before filing suit. Just a bare petition and an affidavit without legal weight. After nearly five years of discovery, BE&K has no more to show.

BE&K tries to sidestep this void by misreading applicable cases. It treats *Miranda* as limited to the Tort Claims Act and recasts *Pepper Lawson* as if it barred evidentiary pleas altogether. But the Texas Supreme Court holds that statutory elements become jurisdictional when waiver turns on a substantive violation. And rather than preclude *Miranda*'s application to Section 114.003, *Pepper Lawson* did the opposite: It held that the university lost because it failed to conclusively disprove breach. Here, TAMUS produced unrebutted evidence showing BE&K never fulfilled the conditions precedent that would trigger TAMUS's duty to pay.

Chapter 114 is not an automatic waiver. It is a narrow, cabined consent that is limited to suits grounded in actual breaches of express provisions. Because BE&K never produced evidence establishing those jurisdictional facts, the district court erred in denying TAMUS's plea.

# ARGUMENT

## I. BE&K Misunderstands the Jurisdictional Standard.

TAMUS argued that BE&K failed to provide any evidence supporting jurisdictional facts, including any duty to pay that would precede a valid breach claim; thus, the district court erred by denying TAMUS's jurisdictional plea. TAMUS Br.14-44. BE&K responds that "TAMU relies on arguments about the merits, not about jurisdiction," "Chapter 114 and *Pepper Lawson*[1] require the Court to reject [this] attempt," and the seminal case on evidentiary pleas to the jurisdiction, *Texas Department of Parks & Wildlife v. Miranda*, 133 S.W.3d 217 (Tex. 2004), is limited to its facts, *see, e.g.*, BE&K Br.8-9. Each lack merit.

### A. Section 114.003 claims are not immune from evidentiary pleas.

TAMUS explained how a jurisdictional plea based on evidence applies to Section 114.003. TAMUS Br.14-44. BE&K's response demonstrates confusion over bedrock Texas law. It draws a dichotomy between *Miranda*, which it views as limited to the Texas Tort Claims Act (TTCA), and *Pepper Lawson*, which purportedly severs any link between Chapter 114's immunity waiver and "merits questions." BE&K Br.22-23. But any jurisdictional fact can be challenged for want of evidence. *See Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019); BE&K Br.10 (conceding the applicable standard). BE&K acknowledges (at 14-15) that it must plead breach—but resists the obligation to provide any evidence of the same. It treats *Mi-*

---

[1] *Pepper Lawson Horizon International Group, LLC v. Texas Southern University*, 669 S.W.3d 205 (Tex. 2023) (per curiam).

*randa* as sui generis. Yet—as myriad cases applying *Miranda* show—merits and jurisdictional facts "intertwine" when the statute ties the immunity waiver to a substantive claim. *See, e.g.*, *State v. Lueck*, 290 S.W.3d 876, 880–82 (Tex. 2009); *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 783 (Tex. 2018); *Swanson*, 590 S.W.3d. at 552. And contrary to BE&K's claim, *Pepper Lawson* does not alter the status quo but instead confirms that the breach elements are relevant to this jurisdictional inquiry.

**1.** BE&K insists that *Miranda*'s evidentiary plea standard does not apply because the "unusual confluence of standards" at play there explains why "the Court had to consider a merits question … to resolve the jurisdictional dispute." BE&K Br.22; *see id.* at 21 ("*Miranda* addressed a materially distinguishable immunity-waiver statute, the [TTCA]."). It contends that "unlike the [TTCA], Chapter 114 does not intertwine the jurisdictional and merits questions" but "expressly waives immunity 'for the purpose of adjudicating a *claim*' covered by the statute." *Id.* at 22 (quoting Tex. Civ. Prac. & Rem. Code § 114.003 (emphasis added)). Neither is correct.

The *Miranda* standard governing evidentiary pleas extends beyond the TTCA. *Contra id.* For example, the Texas Supreme Court has extended *Miranda*'s logic to: (1) inverse condemnation, *see Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 491 (Tex. 2012) ("Hearts Bluff has not established the existence of jurisdiction in this case because [it] cannot establish a viable takings claim." (citing *Miranda*, 133 S.W.3d at 226)); (2) the Whistle Blowers Act, *see Lueck*, 290 S.W.3d at 882 (analogizing *Miranda* and holding that "[w]e see no reason to depart from [the] decision[] when the elements … are equally relevant to the jurisdictional requirement that the

plaintiff actually allege a violation"); (3) the Texas Open Meetings Act (via the Uniform Declaratory Judge Act), *Swanson*, 590 S.W.3d at 546; and (4) the Texas Commission on Human Rights Act, *Alamo Heights*, 544 S.W.3d at 763, among others. Indeed, this Court has applied the *Miranda* standard in its recent decision addressing Section 114.003. *See Tex. S. Univ. v. Westwood Restoration, LLC*, No. 15-24-00064-CV, 2025 WL 2078670, at *2 n.6 (Tex. App.—[15th Dist.] July 24, 2025, no pet.) (mem. op.).[2]

That is because, while *Miranda* is the seminal case, the evidentiary plea does not exist because of *Miranda*. *See, e.g.*, *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000) ("[A] court deciding a plea to the jurisdiction is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised."); *see also* Dale Wainwright & Lindsay Hagans, *Pleas to the Jurisdiction*, 72 The Advoc. (Texas) 18, 18 (2015) (explaining that a jurisdictional plea "employed to challenge a trial court's subject-matter jurisdiction … has been in our rules of trial court procedure since 1877").

Indeed, BE&K contends that the Court should instead follow *Miranda*'s predecessor, which "held that a plea to the jurisdiction 'should be decided without delving into the merits of the case.'" BE&K Br.30 (quoting *Bland Indep. Sch. Dist.*, 34 S.W.3d at 554). But *Miranda* reversed the Fourth Court for applying *Bland* the way

---

[2] TAMUS identified *Miranda* as the "seminal case" regarding evidentiary pleas. TAMUS Br.16. As of filing this brief, Westlaw shows 4,183 citations, including 133 by the Texas Supreme Court and 27 by this Court (despite its recent existence). That proposition stands.

that BE&K now urges. *See* 133 S.W.3d at 223. The Fourth Court had "held that an inquiry behind the factual allegations pled in support of subject matter jurisdiction was improper" absent allegations of sham pleadings. *Id.* (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 55 S.W.3d 648, 652 (Tex. App.—San Antonio 2001), *rev'd*, 133 S.W.3d 217 (Tex. 2004)). The Texas Supreme Court explained that this conclusion "conflicts with our holding in *Bland* that a court must consider evidence when necessary to resolve the jurisdictional issues raised." *Id.*

**2.** When a statute ties waiver to a substantive violation, the elements of that violation become jurisdictional facts. *Lueck*, 290 S.W.3d at 880–82. *Lueck* addressed the Whistleblower Act, which waived immunity only for "violation[s] of this chapter." *Id.* at 881 (citing Tex. Gov't. Code § 554.0035). The Texas Supreme Court held that "mere[] reference" to the Act is not enough; the plaintiff must actually allege facts that support a violation. *Id.* at 882. That required courts to examine whether the pleaded facts satisfied the Act's elements, even though those elements overlap with the merits. *See id.*

The Court rejected the same objections BE&K raises here. Lueck argued that treating the violation elements as jurisdictional would improperly force him to prove his case before jurisdiction attached. *Id.* at 880. The Court disagreed, explaining that considering those elements does not collapse merits into jurisdiction; it enforces the statutory limits on the waiver. *Id.* at 881–82. It also rejected the argument that *Miranda* was unique to the TTCA, reasoning that the Whistleblower Act likewise imposed a limited waiver that confined jurisdiction to statutory bounds. *Id.* at 882.

5

*Lueck* shows that when waiver is tied to substantive elements, those elements are jurisdictional. Chapter 114 works the same way—BE&K had to provide evidence of breach, not just cite the statute.

**3.** The principle from *Lueck* applies directly to Chapter 114. Section 114.003 waives immunity "for the purpose of adjudicating a claim for breach of an express provision of the contract," "subject to the terms and conditions" of the chapter. Tex. Civ. Prac. & Rem. Code § 114.003. Just as in *Lueck*, jurisdiction cannot rest on "mere reference" to the statute. Courts must ask whether the plaintiff has alleged and supported a breach of an express provision within the statutory limitations. *Id.* §§ 114.004, .006, .011. *Pepper Lawson* reinforces that conclusion by emphasizing that Chapter 114's waiver is "cabin[ed]" by its text and conditions. 669 S.W.3d at 210-12.

Just as the Whistleblower Act's waiver required courts to examine the elements of an actual statutory "violation" before jurisdiction attached, *Lueck*, 290 S.W.3d at 880, Section 114.003 requires courts to examine whether the plaintiff has alleged and supported a claim for breach of an express provision of the contract. Mere reference to Chapter 114, like mere reference to the Whistleblower Act, is insufficient; the trial court must determine whether the pleaded facts, and any evidence offered, establish that the dispute falls within the waiver's terms. *See id.* at 882. And a limitation on the State's consent to suit is thus inherently a limitation on the State's liability: the Legislature has permitted courts to adjudicate only those disputes that fall within the defined statutory boundaries. *See id.* So too under Chapter 114. By making the waiver "subject to the terms and conditions of this chapter," the Legislature directed courts

6

to ensure that jurisdiction extends no further than liability would. Tex. Civ. Prac. & Rem. Code § 114.003.

That conclusion is reinforced by Chapter 114's structure. Section 114.004 strictly limits the categories of recoverable damages—including the balance due under the contract or written change orders, specified attorney's fees, and interest—and expressly excludes consequential, exemplary, or "unabsorbed home office overhead" damages. Section 114.006 preserves all defenses, including immunity from liability, ensuring the State may contest liability on ordinary contract grounds. And Section 114.011 restricts satisfaction of any judgment to appropriated funds, underscoring the Legislature's intent to cabin the scope of the waiver. Reading Section 114.003 in harmony with these provisions and *Lueck*'s guidance shows that waiver applies only if the plaintiff establishes jurisdictional facts showing breach of an express contract term within the statute's limits.

That is precisely how *Pepper Lawson* understood Section 114.003. The Court recognized that the statute "clearly and unambiguously waives immunity from suit for breach-of-contract claims against a 'state agency,' including 'a university system or a system of higher education,' that has entered into a written contract for construction services or materials." 669 S.W.3d at 210–11 (quoting Tex. Civ. Prac. & Rem. Code § 114.001(3)). But it emphasized in the same breath that the waiver is "cabin[ed]" to "a claim for breach of an express provision of the contract," and that the waiver is "subject to [Chapter 114's] terms and conditions." *Id.* (second alteration in original). In other words, jurisdiction is limited not only by the existence of a contract but also by the specific substantive boundaries and damages limitations the

7

Legislature imposed in Sections 114.004, 114.006, and 114.011. Thus, just as in *Lueck*, the scope of suit is coextensive with the scope of liability, and courts must examine the statutory elements to determine whether immunity has in fact been waived.

### B. Neither *Pepper Lawson* nor the LGCCA change this outcome.

BE&K claims (at 15-17) that there is no daylight between *Pepper Lawson* and this case, and TAMU's evidentiary plea must fail. TAMUS explained (at 33-36) how, superficial similarities aside, *Pepper Lawson* materially differs from this case, including: (1) the reverberating difference that TSU did not deny satisfaction of conditions precedent or bring an evidentiary plea; and (2) the difference between PLH's and BE&K's pre-suit conduct. BE&K's only new points are that (1) *Pepper Lawson* demonstrates that *Miranda*'s evidentiary plea standard does not apply, BE&K Br.20-23, and (2) the Local Government Contract Claims Act's (LGCCA) textual similarities to Chapter 114 win the day, *id.* at 23-25. Not so.

BE&K misreads what *Pepper Lawson* actually holds. That decision identified two errors by the court of appeals. The First Court required PLH to show: (1) that "the parties' contract unambiguously waives TSU's immunity" and (2) "breach of an express provision of the parties' contract." 669 S.W.3d at 211. It engaged TSU's "host of contract defenses" and "required PLH to prove its case" at the jurisdictional stage. *Id.* Responding to these errors, the Supreme Court held that (1) PLH only needed to satisfy Chapter 114's waiver—not prove the contract itself waived immunity; and (2) TSU failed to "conclusively establish" its substantive defense. *Id.* BE&K collapses these two points into one, erasing the second.

The Court's reasoning makes clear that the breach elements are relevant. It held that PLH met its pleading burden by alleging a contract and specific breaches. But it went on to explain that TSU failed to conclusively establish that: (1) it had not breached an express provision, and (2) PLH had not satisfied the payment conditions. *Id.* at 211–12. That reasoning presumes the opposite of BE&K's claim—if TSU had conclusively established one of those elements, dismissal would have been proper.

BE&K tries to turn *Pepper Lawson* into a blanket rejection of evidentiary pleas. That is mistaken. The Supreme Court cited *Miranda* and *Bland* approvingly, reaffirming that courts "may [also] consider evidence and must do so when necessary to resolve the jurisdictional issues raised." *Id.* at 211 (alteration in original). In other words, *Pepper Lawson* applied *Miranda*; it did not silently overrule it. BE&K isolates the statement that "'PLH's burden was to allege facts affirmatively demonstrating the court's jurisdiction to hear the cause, and it did.'" BE&K Br.21 (quoting *Pepper Lawson*, 669 S.W.3d at 211). But that language provides that PLH's initial burden was anchored in the statute, not the contract. *Pepper Lawson*, 669 S.W.3d at 211. The Court went on to explain that TSU failed to negate the breach elements because it relied on a procedurally forfeited argument. *Id.* at 211-12. *Pepper Lawson* thus applied *Miranda*'s framework to confirm the initial pleading burden before analyzing the substantive challenge. *See id.*

BE&K contends that this reading "contort[s]" *Pepper Lawson* by "by taking a snippet … out of context" and "the jurisdictional inquiry does not implicate the merits at all." BE&K Br.23. This argument piggybacks on its claims that *Miranda*'s

9

evidentiary plea standard is irrelevant to *Pepper Lawson* or Chapter 114—a puzzling one considering *Pepper Lawson*'s invocation and application of that standard. 669 S.W.3d at 211. In any event, if *Pepper Lawson* silently overruled *Miranda*, the Court would have stopped after addressing the first error. Instead, it continued to the elements underlying both jurisdiction and the merits, which TSU failed to conclusively negate on the pleadings alone. *See id.* at 212.

BE&K says the evidence in *Pepper Lawson* was ignored as irrelevant, citing the fact that "the university attached evidence to its plea to the jurisdiction—specifically, a contract and change orders." BE&K Br.20 (citing *Pepper Lawson*, 669 S.W.3d at 209-11). But the terms of the contract and change orders were not at issue—the relevant dispute, about PLH's conduct, turned on the pleadings. *See Miranda*, 133 S.W.3d at 227 (explaining that a jurisdictional plea "consider[s] relevant evidence submitted by the parties" regarding "the existence of jurisdictional facts"). This Court's recent decision in *Westwood Restoration* recognized this distinction. 2025 WL 2078670, at *2. While there were "two contracts between the parties in the record," *id.* at *1, the relevant dispute turned on the pleadings, *id.* at *2 n.6.

The differences between *Pepper Lawson* and this one are decisive. "TSU neither specifically denied that PLH satisfied the payment conditions nor challenged the facts that were actually pleaded." *Pepper Lawson*, 669 S.W.3d at 212. TAMUS did both. *See* CR.279-80 (¶¶ 1, 4, 6, 7, 8 (denials)); CR.286-92 (evidentiary plea to pleaded facts). PLH thus only needed to plead; BE&K must produce evidence. It has not. Nearly five years of discovery have yielded no more than conclusory assertions.

**2.** BE&K reiterates (at 23-30) that governmental immunity supports the district court's decision. Perhaps so—but that only emphasizes the district court's error.

First, BE&K's reliance on the LGCCA proves too much. It urges the Court (at 23-25) to look to LGCCA for interpretive guidance, and faults TAMUS for "side-step[ping]" the same. BE&K Br.29. It provides a chart (at 25) comparing Section 114.003 and Local Government Code Section 271.152. Yes, Chapter 114's structure resembles the LGCCA's, but with two critical distinctions: it applies to the State, which enjoys sovereign immunity, and it expressly "cabins" the waiver to breaches of "'an express provision of the contract.'" *Pepper Lawson*, 669 S.W.3d at 210 (quoting Tex. Civ. Prac. & Rem. Code § 114.003). Those differences matter. They show that the Legislature intended a narrower waiver, not the same or a broader one.

BE&K says nothing to the contrary. True enough, the Court invoked a prior decision on local government immunity when it noted that Section 114.003 was "subject to [Chapter 114's] terms and conditions," and it previously held that "a similarly worded waiver provision applicable to local governmental entities … waive[d] immunity from suit only to the extent the plaintiff seeks categories of damages that are recoverable under the statute." *Pepper Lawson*, 669 S.W.3d at 211–12 (first alteration in original) (citing *Zachry Constr. Corp. v. Port of Hous. Auth. of Harris Cnty.*, 449 S.W.3d 98, 107-10 (Tex. 2014)). But that cuts against BE&K. If the Supreme Court viewed any of its myriad decisions on the LGCCA as probative of the other elements, it would have said so. The Court instead noted only that the term "subject to [Chapter 114's] terms and conditions" restricts the waiver. *See id.* (alteration in original).

11

Second, BE&K's assertion that it only must show a "substantial claim" of the elements undercuts its entire argument. It quotes *Zachry* as "stating that 'substantial claim' standard requires only 'that the claimant must plead facts with some evidentiary support that constitute a claim for which immunity is waived, not that the claimant will prevail.'" BE&K Br.27 n.2 (quoting *Zachry Const.*, 449 S.W.3d at 110). The first half of that quote, which BE&K omits, provides: "By 'substantial' claim we mean, as we held in [*Miranda*]...." *Zachry Const.*, 449 S.W.3d at 110. That sentence ends with a footnote incorporating the entire evidentiary plea standard that BE&K asks this Court to reject. *Id.* at 110 n.53.

BE&K's half quoting of *Garland* is equally telling. Per BE&K, "the *Garland* court 'reject[ed] the District's argument that Reeder failed to allege a substantial claim because it ... failed to provide evidence of a breach.'" *See* BE&K Br.27 (quoting *Garland Indep. Sch. Dist. v. Reeder Gen. Contractors, Inc.*, No. 05-22-00855-CV, 2024 WL 1208304, at *7 (Tex. App.—Dallas Mar. 21, 2024, pet. denied) (mem. op.)). And "[t]he court held that the defendant's no-evidence-of-breach 'arguments go to the District's liability and do not address whether immunity has been waived.'" *Id.* (quoting *Garland*, 2024 WL 1208304, at *8).

That case, applying the LGCCA, was about breach, including whether Reeder could allege liquidated damages. *Garland*, 2024 WL 1208304, at *7. The Fifth Court held that Reeder did not have to plead or provide evidence supporting liquidated damages because he was not seeking them "independently," but instead as an offset and thus did not implicate jurisdiction (where permissible damages had been pled).

12

*See id.* That is the context of BE&K's first quote. The second quote concerns a completely different topic, where the court explained that "[t]he District also argues the Legislature has not waived immunity for the types of damages sought by Reeder…. But these arguments go to the District's liability and do not address whether immunity [from suit] has been waived." *Id.* at *8. Misquotes from a non-binding opinion on a different statute that applies to different entities do not outweigh the Texas Supreme Court's guidance on BE&K's burden.

All this begs the question: if BE&K merely had to satisfy the lower-threshold, evidence-free government immunity test, why did it need nearly five years of discovery to do so? *See* TAMUS Br.32-34. BE&K provides no answer.

## II.  BE&K Fails to Identify Evidence Supporting Jurisdiction.

Failing to distinguish the black-letter sovereign immunity law guiding this analysis, BE&K turns to the elements. It argues that TAMUS did not make sufficient denials to preserve the argument and, in any event, the provisions governing the payment it seeks are covenants, not conditions precedent. BE&K Br.31-41. And it spills much ink explaining that TAMUS's position creates "an absurd or impossible result" in which BE&K, or similarly situated parties, can never vindicate contractual rights. BE&K Br.37-38, 42-44. These efforts to contrive tension in the law fail on their own terms and highlight BE&K's complete lack of supporting evidence.

### A.  Conditions precedent are relevant.

BE&K insists conditions precedent are irrelevant. *Pepper Lawson* says otherwise: it faulted TSU not for raising them, but for failing to deny them. 669 S.W.3d at 211–

12. Here, TAMUS denied them and proved they were unsatisfied.[3] Section 12.1.2.1 makes work completion a condition to final payment, and BE&K's own filings admit work was incomplete when it sued. *See* TAMUS Br.26, 50. That alone defeats jurisdiction. Other provisions reinforce the same point, but the lesson is simple: no completion, no duty; no duty, no breach; no breach, no waiver.

**1.** TAMUS explained (at 19-22) that it provided evidence of multiple conditions precedent to payment that were lacking on September 1, 2020, while BE&K's only evidence is an affidavit that is not probative as a matter of law. Jurisdiction is thus improper because BE&K did not complete the conditions precedent that would trigger TAMUS's duty to pay—generally or under the express provisions on which BE&K relies. *See* TAMUS Br.19-20, 26-30. BE&K first attacks conditions precedent conceptually, arguing that (1) they are irrelevant, especially if BE&K did not invoke them as an "express provision," and (2) the provisions preceding payment are covenants, not conditions precedent.

BE&K claims no less than six times that the existence or satisfaction of conditions precedent are irrelevant to this dispute. *See* BE&K Br.18, 20, 29, 30-31, 37, 47. But, as TAMUS explained (at 33-34), *Pepper Lawson* indicates otherwise. Discussing "the extent the jurisdictional inquiry implicated the merits of PLH's cause of action," the Court explained that "TSU failed to conclusively establish that…it did

---

[3] TAMUS explained that *Pepper Lawson* does not mandate specific denials and, even if Rule 54 applied, TAMUS satisfied it. *See* TAMUS Br.34-35. BE&K merely repeats the same argument. BE&K Br.31-34. For these reasons, TAMUS refers the court to its opening brief arguments.

not breach an express provision of the contract…[and] PLH did not follow the procedures triggering TSU's obligation to pay." 669 S.W.3d at 211-12. Dismissal accordingly would be appropriate if TSU *did* conclusively establish those two things. *See id.* The Court then explained that PLH had no obligation to prove it satisfied the conditions precedent because TSU "neither specifically denied that PLH satisfied the payment conditions nor challenged the facts … actually pleaded." *Id.* at 212.

Under BE&K's view, *Pepper Lawson*'s entire discussion of conditions precedent would not only be pointless but wholly misleading. If BE&K were correct, the Texas Supreme Court would have said that the PLH did not have to prove satisfaction of conditions precedent because that is irrelevant to the inquiry. Instead, it explained that the Court of Appeals erred "[b]ecause TSU did not specifically deny that PLH satisfied all conditions precedent." *Id.* at 212.

BE&K next argues that the provisions do not overcome the presumption against conditions precedent, relying on *Gulf Constr. Co., Inc. v. Self*, 676 S.W.2d 624 (Tex. App.—Corpus Christi 1984, writ ref'd n.r.e.) and *Sheldon L. Pollack Corp. v. Falcon Indus., Inc.* 794 S.W.2d 380, 383-84 (Tex. App.—Corpus Christi 1990, writ denied). TAMUS explained (at 37-39) why those cases are inapplicable. Because BE&K does not engage those arguments, TAMUS rests on them.

BE&K contests the import of *Calpine Producer Servs., LP v. Wiser Oil Co.*, 169 S.W.3d 783 (Tex. App.—Dallas 2005, no pet.), which, according to BE&K, "acknowledged that clauses that might be considered conditions precedent in commodities contracts instead impose covenants—not conditions precedent—when

15

they appear in construction contracts." BE&K Br.39. Not so. The Fifth Court explained that *Gulf Construction* relied on "the expectations in the construction business that the solvency of the owner is a credit risk to be borne by the general contractor, which burden is eased by mechanics liens and installment payments." *Calpine*, 169 S.W.3d at 789. BE&K correctly asserts (at 40) that this case addresses a construction contract. But BE&K is not a subcontractor, so the policy reasoning in *Gulf Construction* does not apply. In any event, *Calpine*'s analysis emphasized the language of the contract over this categorical rule. *Id.* at 788-89.[4]

**2.** BE&K's petition invoked—as "express provisions"—Sections 9.6.2.2, 10.3.2, 10.3.2.2, and 11.3.1. BE&K Br.13; CR.9. TAMUS explained (at 26-30) how BE&K failed to comply with the conditions precedent to TAMU's duty to pay under each. BE&K responds (at 37-38) that the text of two provisions show that they are not conditions precedent.

**Section 12.1.2.1.** This provision states that "[c]ompletion of all Work is a condition precedent to … [f]inal [p]ayment." CR.118, ¶ 12.1.2.1. BE&K responds that "[d]espite that phrasing, the provision is not a condition precedent here" and

---

[4] The other "Courts of Appeals that have reached the issue in this century" also reject this policy reasoning in the face of plain language. *See FaulknerUSA, LP v. Alaron Supply Co.*, 322 S.W.3d 357, 360 (Tex. App.—El Paso 2010, no pet.) ("Although we agree with *Gulf* that we should be hesitant to find a condition precedent in a construction contract, we cannot turn a blind eye when, as here, the provision is an express condition precedent."); *Lakin Enters. v. Sebastian*, No. 05-08-00213-CV, 2009 WL 428491, at *4 (Tex. App.—Dallas Feb. 23, 2009, no pet.) (mem. op.) ("Unlike the contracts in those two cases, the second subcontract in this case contains an *express* condition precedent.").

16

"BE&K's Petition does not allege a breach of the CMAR Agreement's final-payment provision, so the provision that TAMU relies on is irrelevant here." BE&K Br.37. The text of the provision speaks for itself: the parties agreed that work completion was a condition precedent to final payment. *See Endeavor Energy Res., L.P. v. Energen Res. Corp.*, 615 S.W.3d 144, 148 (Tex. 2020) ("The most important consideration in interpreting a [contract] is the agreement's plain, grammatical language."). BE&K claims (at 37) that, even if conditions precedent were relevant, TAMUS cannot rely on Section 12.1.2.1 because BE&K did not expressly invoke it. Yet it eludes common sense to claim that the court must focus on a party's hand-picked provisions when determining the meaning of a contract. *See id.* ("[Courts] examine the entire [contract] and attempt to harmonize all its parts …." (internal quotation marks omitted)).

As TAMUS explained (at 28), BE&K seeks sums are that remitted in the final payment, which is governed by Article 12, not Article 10. CR.116-21. In any event, Article 10 does not aid BE&K's case because the cited provision addresses TAMUS's unfettered discretion over early retainage release. CR.109, ¶ 10.3.2. A provision affording TAMUS discretion regarding mid-project payments does not impose a duty to issue final, close-out payments. Retainage *would* be due at the end of the project, after appropriate offsets, CR.120 (¶ 12.3.4), but BE&K expressly dis-

17

claims (at 37) a breach of those payment provisions and, in any event, provided neither a final payment request or a request to release retainage, CR.300-01 (¶¶ 10, 16).[5] Even if Article 10 afforded BE&K a substantive right, it mandated that written consent of surety approving release must accompany any requested release. CR.109 (¶ 10.3.2.1). BE&K did not provide that, either. CR.301 (¶ 17).

**Section 10.3.** TAMUS pointed to Section 10.3's language, which speaks to the change order accounting and provides that there is "no duty to pay the Contractor except on receipt by the ODR of . . . a complete Invoice certified by the A/E." CR.109. BE&K explains that "[d]espite the seemingly absolutist phrasing, context demonstrates that the entire contractual payment process is premised on covenants." BE&K Br.38. The language again speaks for itself. *See Endeavor Energy Res.,* 615 S.W.3d at 148. While Section 10.3 governs progress payments, TAMUS raises this language to demonstrate that, even if BE&K was seeking sums outside of the final payment process, it has not satisfied the conditions triggering TAMUS's duty to pay.

TAMUS explained that "[e]ven if the provisions' language were not clear, the context would show the parties intent." TAMUS Br.39 (citing *Bd. of Regents of Univ. of Texas Sys. v. IDEXX Lab'ys*, 691 S.W.3d 438, 442-43 (Tex. 2024)). Here, the fact that TAMUS is a public entity means it cannot lawfully release the funds without

---

[5] TAMUS argued (at 24-25) that BE&K did not submit a final payment application prior to filing suit (i.e., the pencil copy issue). BE&K did not respond to this argument and thus waives it. *See Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 500 (Tex. 2015) ("Failure to provide citations or argument and analysis as to an appellate issue may waive it.").

work completion or sufficient cost documentation. *See* TAMUS Br.39-40. BE&K responds (at 29) that TAMUS did not raise this argument below and thus abandoned it. But these points go to the context surrounding the dispute provisions as well as the intent of the parties, both of which are relevant to discerning a contract's meaning. *See IDEXX Lab'ys*, 691 S.W.3d at 442-43.

The provisions are relevant to whether BE&K's failure to perform before filing suit precluded TAMUS's duty to pay. In this posture, that goes to whether the district court had jurisdiction at the time of filing—and arguments about jurisdiction cannot be forfeited. *See Rattray v. City of Brownsville*, 662 S.W.3d 860, 869 (Tex. 2023) ("[T]he 'implication' of jurisdiction may allow a governmental entity to raise immunity arguments later than at the outset of litigation—even for the first time on appeal." (citing *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 94-96 (Tex. 2012))). Even if the Court excludes the color context, TAMUS points to the myriad provisions showing why it must receive the documents before final payment retainage release, all of which are relevant to the interpretive question. *See Endeavor Energy Res.,* 615 S.W.3d at 148.

**3.** BE&K claims TAMUS's reading creates a "trap" that shuts contractors out of court. Section 12.1.2.1 makes completion of all work a condition precedent to final payment. CR.118 (¶ 12.1.2.1). BE&K insists (at 37) enforcing the plain language creates an "absurd" result because TAMUS could dispute whether work was complete and use that disagreement to close the courthouse doors. But BE&K never completed the work, never furnished the required releases, and never gave notice. Those failures—not the statute—barred jurisdiction.

That argument, in any event, conflates the contractual interpretation question with the evidentiary plea burden. Jurisdiction is not lacking because a dispute exists but because BE&K provided zero relevant evidence to support its claims. *See* TAMUS Br.14-44. Indeed, BE&K's lack of "evidence" defeats what amounts to an equitable plea. The December 2022 update to the district court, which it cites as support, states that BE&K's work was "100% complete on the Tarleton project" because TAMUS is "self-performing" the remaining work. CR.592. This only proves that work was not complete at the time of the petition. TAMUS Br.26, 31, 50. BE&K also relies on its pleading statement that it completed all work before filing suit. BE&K Br.37 (citing CR.9 (¶ 27)). But this no longer controlled once TAMUS both raised a factual challenge and provided contrary evidence. *See Miranda*, 133 S.W.3d at 227 ("[I]f a plea to the jurisdiction challenges the existence of jurisdictional facts, [the court] consider[s] relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised.").

BE&K also argues TAMUS's reliance on the release provisions would force it to "waive all claims" before seeking payment, creating a paradox in which it must forfeit its rights to overcome immunity. BE&K Br.40-42. That misreads the contract. Section 12.3.2 requires an affidavit confirming that subcontractor obligations are or will be paid, supported by "receipts" or "releases and waivers of claims and liens." CR.120. The ellipsis in BE&K's quotation omits "receipts," which shows the provision is about subcontractor payments, not forfeiting claims against TAMUS. Section 10.3.1.4 is the same: it requires subcontractor/vendor releases, or alternatively, a bond to indemnify TAMUS against liens. CR.45. These provisions

20

protect TAMUS from third-party liability, while expressly allowing exceptions for pending subcontractor claims. CR.120. They do not extinguish the contractor's own claims against TAMUS.

BE&K continues: "According to TAMU … BE&K must waive all its claims under the contract and acquiesce to all TAMU's claims in order to receive payment." BE&K Br.42. This "awards TAMU unfettered discretion in determining whether to perform and creates a condition precedent that is impossible to satisfy in the very situation where legal action is necessary—when a dispute arises." *Id.*; *see also id.* at 43-44 (discussing the "absurd paradox"). This is all asserted without citation.

Neither the contract nor the evidence supports this argument. The contract provides a clear, fair sequence: (1) submit change orders/invoices,[6] (2) complete the work,[7] (3) provide cost documentation and subcontractor releases,[8] (4) apply for final payment or await owner's deductions,[9] (5) receive the owner's decision, (6) if dissatisfied, give statutory notice,[10] and (7) complete contractual dispute resolution

---

[6] CR.107-111 (Article 10: Payments); CR.111-16 (Article 11: Changes).

[7] CR.118 (¶ 12.1.2.1); CR.120 (¶ 12.3.1).

[8] CR.120 (¶ 12.3.2).

[9] CR.116-21 (Article 12: Project Completion and Acceptance).

[10] *See* CR.120-21 (¶¶ 12.3.4-.5) (providing that, if the Owner makes deductions to the final payment, the contractor has thirty dates to give notice of the dispute); CR.121 (¶ 12.3.7) ("Final payment constitutes a waiver of all claims and liens by the Contractor except those specifically identified in writing and submitted to the ODR prior to the application for Final Payment.").

process.[11] Contractors who follow these steps preserve their right to sue. *See* TA-MUS Br.35 (quoting *Pepper Lawson*, 669 S.W.3d at 207-09, and detailing PLH's pre-suit conduct). BE&K filed suit after step one.

Brett McCully's sworn deposition confirms this.[12] When asked "is it your position that if there is a claim or dispute at the end of the project, that … an application for final payment can't be submitted?" He answered "No." CR.605 (34:20-24). In response to a long, triple negative question, McCully states that a claim for additional funds cannot be submitted as part of the final payment application. CR.605 (36:10-19). When asked to reconcile the two, he explains that there is a difference between "changing of scope" and asserting a "claim"—the latter requiring withholdings and thus preventing full and "final payment." CR.605-06 (36:20-37:8). He ends this exchange by stating that "[t]hose don't prevent the final payment from being submitted. It may prevent them from being approved, if they don't contain sufficient information or owner disagrees with the numbers in the application." CR.606(37:5-8).

This aligns with the contract. If a contractor properly submits a change order, the owner can accept in whole or in part. CR.111-12 (¶ 11.1). If the owner issues a partial acceptance, the contractor receives the agreed-upon amount and has the right to file a claim for the remainder. CR.121 (¶ 12.3.5). The same goes for costs that are "not related to a requested change." CR.113 (¶ 11.3.1). McCully says that a contractor cannot submit an application that includes a claim (i.e., the already disputed

---

[11] CR.128 (Article 15: Dispute Resolution).

[12] Brett McCully was the Area Manager for TAMUS's Office of Facilities and Planning & Construction and oversaw this project. CR.300-01.

amount) but clarifies that the contractor *can* still submit the claim, and the Owner can reject it. CR.606(37:5-8). That would trigger the claim resolution process. *See, e.g.*, CR.395 (¶ 11.3.1) ("If the Owner and the Contractor cannot agree on the amount of the adjustment in the Contract Sum, it shall be determined as set forth under Article 15."); CR.121 (¶ 12.3.5).

There is no hidden trap: contractors who complete the work, furnish releases, and give notice may reach the courthouse door. BE&K filed suit after step one, which is why jurisdiction never attached.[13] The Court should see through BE&K's attempt to contrive purportedly irreconcilable tensions in the law "from the consequences of their own oversights and failures in nonobservance of obligations assumed." *James Constr. Grp., LLC v. Westlake Chem. Corp.*, 650 S.W.3d 392, 404 (Tex. 2022).

## B. BE&K provides no evidence that it satisfied the conditions.

TAMUS's brief focused in large part on the total absence of evidence demonstrating jurisdiction is proper—particularly after TAMUS provided evidence of its own and the district court gave BE&K nearly five years for discovery. BE&K's only response is that Ballew's affidavit and the December 2022 update from counsel to the district court "at best, create disputes of fact." BE&K Br.41; *see also* BE&K Br.21 n.1, 27 n.2, 37 n.3. But this contention does not acknowledge, nonetheless engage,

---

[13] BE&K conspicuously does not respond to TAMUS's explanation that we got here due to BE&K's mismanagement of its subcontractors. *See* TAMUS Br.36 (providing list of subcontractor lawsuits against BE&K). That is why BE&K could not provide the subcontractor releases necessary for payment, and perhaps why it lacked the cost documentation necessary for change order reconciliation.

23

TAMUS's detailed explanation why both are not legally relevant. *See* TAMUS Br.19-22, 25-26, 31.

For the reasons explained, TAMUS provides evidence supporting its contentions that there was no duty to pay at the time of filing. Without a duty to pay, there is no breach. BE&K failed to provide "more than a scintilla" of evidence to support its claim that jurisdiction existed at the time of filing. *See Swanson*, 590 S.W.3d at 551. This failure, and not the mere existence of a disagreement, is why this suit cannot proceed.

### III. The Failure to Provide Notice Requires Dismissal.

TAMUS explained that BE&K's failure to provide notice before filing suit provided a second reason jurisdiction was not proper. *See* TAMUS Br.44-49. TAMUS showed that (1) notice is jurisdictional, (2) BE&K did not provide it, and (3) substantial compliance does not apply here. BE&K argues in response (at 44-47) that (1) this Court's recent decision in *Westwood Restoration*, 2025 WL 2078670, at \*1, precludes this argument and (2) BE&K substantially complied with any notice requirement.

**A.** *Westwood* does not preclude this argument. There, TSU hired Westwood for restoration services following Winter Storm Uri. *Id.* Westwood sued TSU, alleging that it performed all obligations, TSU failed to pay the full invoice within 30 days, and the claim fell under Chapter 114's immunity waiver. *Id.* TSU filed a plea to the jurisdiction based on the pleadings and argued, as relevant here, that Westwood failed to use Chapter 2260's ADR procedures, which were incorporated in the contract, before filing suit. *Id.* at \*2.

On the ADR issue, this Court explained that Chapter 114 and Chapter 2260 are "mutually exclusive" avenues for "resolving government contract disputes." *Id.* at *3. While "[b]oth statutes require alternative dispute resolution processes in some circumstances ... Chapter 114 does not require such contract provisions, but states that alternative dispute resolution requirements that are stated or expressly incorporated into a government contract 'are enforceable.'" *Id.* (quoting Tex. 005). This Court continued: "Section 114.005 makes these contractual ADR provision '*enforceable*,' [but] does not say they are *jurisdictional*." *Id.* This reading, the Court reasoned (and TSU agreed), followed from a recent Texas Supreme Court decision which construed "almost identical language" to require the same. *Id.* (discussing *San Jacinto River Auth. v. City of Conroe*, 688 S.W.3d 124, 131 (Tex. 2024)). The Court affirmed the district court's denial of the plea and remanded. *Id.*

BE&K claims that *Westwood* disposes of TAMUS's notice argument because "Chapter 114 does not include a pre-suit notice requirement. Therefore, any notice requirement included in the contract is enforceable but not jurisdictional." BE&K Br.45 (citing *Westwood Restoration, LLC*, 2025 WL 2078670, at *3).

But that argument incorrectly presumes notice requirements and ADR procedures are the same. Not only are they mechanically different but they also serve different purposes in the resolution process. ADR procedures "authorize contracting parties to devise methods for dispute resolution in their contracts." *San Jacinto River Auth.*, 688 S.W.3d at 132 (quoting *San Antonio River Auth. v. Austin Bridge & Rd., L.P.*, 601 S.W.3d 616, 625 n.45 (Tex. 2020)). Indeed, the Court explained that, without jurisdiction, the ADR provision cannot be "enforceable." *Id.* That is why Texas

25

Government Code Section 311.034, which provides that "[s]tatutory prerequisites" to suit "are jurisdictional requirements in all suits against a governmental entity," does not extend to pre-suit ADR—because "contractually selected adjudication procedures … and their enforcement by a court would necessarily occur after suit is brought." *Id.* (citation omitted).

Notice procedures, on the other hand, reflect "the Legislature['s] … interest in managing state fiscal matters" by potentially heading off litigation through negotiation. *See Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 513 (Tex. 2012). That is why Chapter 2260 imposes reciprocal obligations: the claimant must submit notice to "[t]he chief administrative officer or, if designated in the contract, another officer of the unit of state government" and the officer, in turn, "shall examine the claim and any counterclaim and negotiate with the contractor in an effort to resolve them." Tex. Gov't Code § 2260.052. Yet when a claimant skips notice and files suit, that eliminates the State's ability to negotiate resolution before expending resources in litigation.

*San Jacinto*'s logic counsels the same. "The word 'enforceable' makes clear that the waiver of immunity … includes the ability to require parties to comply with their agreed procedures for that adjudication." *San Jacinto River Auth.*, 688 S.W.3d at 131-32. If a claimant files suit without engaging contractual, pre-suit ADR, the State can move the court to abate proceedings and order compliance. *Cf. id.* at 132 ("Absent a waiver of immunity, a court lacks subject-matter jurisdiction and must dismiss the suit—it cannot order the parties to engage in ADR procedures."). But if a claimant files suit without giving notice, the State cannot move the court to order pre-suit

notice. Thus, rather than "thwart[ing] enforcement," without a jurisdictional consequence, pre-suit notice is not enforceable at all. *Id.*

The Texas Supreme Court is unequivocal about the jurisdictional nature of notice requirements for this reason. The Texas Supreme Court explained the history of notice provisions, including the Legislature's explicit mandate adopted in response to judicial erosion of this threshold requirement. *See Chatha*, 381 S.W.3d at 510-11 (discussing Tex. Gov't Code § 311.034). Thus, strict enforcement "is consistent with the doctrine of sovereign immunity" which "remains intact unless surrendered in express and unequivocal terms by the statute's clear and unambiguous waiver." *Id.* at 512.

**B.** BE&K conceded that it did not give formal notice of its breach of contract claims to the Chancellor before filing suit. CR.580-81. TAMUS explained (at 44-49) why that failure is jurisdictional. BE&K responds that "the law does not require that notice be directed at any specific person in the first instance," BE&K Br.46 (citing § 2260.052(a)), and cites its correspondence with Brett McCully as substantially complying with the notice provision. But TAMUS explained that substantial compliance does not apply to mandatory notice provisions. *See* TAMUS Br.46-47 (discussing *BankDirect Cap. Fin., LLC v. Plasma Fab, LLC*, 519 S.W.3d 76, 78 (Tex. 2017)). BE&K claims that "[i]t is immaterial that BE&K did not direct its written notices to the Chancellor, as TAMU had actual notice of this dispute." BE&K Br.46. But that argument would collapse the line the Legislature drew. Routine project correspondence is meant to keep work moving; statutory notice is meant to alert the State's leadership that a dispute has ripened into a legal claim and deserves formal

27

attention before litigation begins. To treat the former as the latter would transform intra-project management into jurisdictional triggers—an outcome that strips notice of its purpose and nullifies the safeguard the Legislature required.

## PRAYER

The Court should reverse the district court order denying TAMUS's plea to the jurisdiction and render judgment dismissing the suit.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

WILLIAM R. PETERSON
Solicitor General

BRENT WEBSTER
First Assistant Attorney General

/s/ Jacob C. Beach
JACOB C. BEACH
Assistant Solicitor General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-6407
Fax: (512) 474-2697

State Bar No. 24116083
Jacob.Beach@oag.texas.gov

Counsel for Appellant

## CERTIFICATE OF COMPLIANCE

Microsoft Word reports that this brief contains 7,406 words, excluding exempted text.

/s/ Jacob C. Beach
JACOB C. BEACH

28

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Amanda Ruch on behalf of Jacob Beach
Bar No. 24116083
amanda.ruch@oag.texas.gov
Envelope ID: 106274264
Filing Code Description: Other Brief
Filing Description: BEK_Reply_Final
Status as of 9/30/2025 3:41 PM CST

Associated Case Party: BE&K Building Group, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Frank Domino | 24038864 | frankdomino@mehaffyweber.com | 9/30/2025 3:28:54 PM | SENT |
| Thomas Crist | 24119645 | tcrist@beneschlaw.com | 9/30/2025 3:28:54 PM | SENT |
| Docket Department | | Docket2@beneschlaw.com | 9/30/2025 3:28:54 PM | SENT |
| Jonathon Korinko | | jkorinko@beneschlaw.com | 9/30/2025 3:28:54 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Athena Leyton | | athena.leyton@oag.texas.gov | 9/30/2025 3:28:54 PM | SENT |
| Nicole A.Myette | | nicole.myette@oag.texas.gov | 9/30/2025 3:28:54 PM | SENT |
| William Farrell | | biff.farrell@oag.texas.gov | 9/30/2025 3:28:54 PM | SENT |
| Amanda Ruch | | amanda.ruch@oag.texas.gov | 9/30/2025 3:28:54 PM | SENT |
| Legal Secretaries | | osg-legalsecretaries@oag.texas.gov | 9/30/2025 3:28:54 PM | SENT |
| Jacob Beach | | jacob.beach@oag.texas.gov | 9/30/2025 3:28:54 PM | SENT |